GASKINS, J.
 

 11 This case involves a three-vehicle collision in which three lives were lost. The plaintiffs appeal a trial court ruling granting summary judgment in favor of David Boone Oilfield Consulting, Inc. (“Boone”), and dismissing it from the suit. The plaintiffs had alleged that Boone was the employer of Jathan “Jay” Frederick, the driver who supposedly caused the accident, and that he was in the course and scope of
 
 *1018
 
 his employment at the time of the accident. We affirm.
 

 FACTS
 

 On February 3, 2007, Eddy Washington was driving a pick-up truck eastbound on LA Highway 5 in DeSoto Parish. Also eastbound was a Ford Taurus driven by Marion Thomas; his passengers were La-Quetia White, who was pregnant, and her 10-month-old child, Salindra Thomas. Mr. Thomas was following Mr. Washington. Both vehicles stopped to turn left on West-wood Drive.
 

 Mr. Frederick, who had just left an oil well location, was also driving east in his personal pick-up truck; he was going to Kickapoo to get something to eat. He struck the Thomas car from behind; in turn, the Thomas car hit the Washington truck. Mr. Thomas and Salindra died. Due to Ms. White’s serious injuries, her baby was subsequently delivered and died.
 

 Suit was filed in March 2007 by Ms. White and Mr. Washington against Mr. Frederick and his insurer, State Farm Insurance Company.
 
 [1]
 
 In January 2008, they filed an amended petition to add as defendants Goodrich Petroleum |2Company, LLC (“Goodrich”), and Boone. They alleged that Mr. Frederick worked for Goodrich and Boone and was in the course and scope of his employment at the time of the accident.
 

 In June 2008, Goodrich filed a motion for summary judgment in which it asserted that it hired Boone, an oilfield consultant company, to test oil wells and that Mr. Frederick worked for Boone as an independent contractor. Goodrich further contended that at the time of the accident, Mr. Frederick was not performing any work on its behalf. In support of the motion, Goodrich submitted excerpts from Mr. Frederick’s deposition and an affidavit by David Boone, the president of Boone. In August 2008, the motion was granted, and Goodrich was dismissed from the suit. No appeal of that judgment was sought, and it is now final.
 

 In the meantime, in May 2008, Boone filed a motion for summary judgment; it asserted that Mr. Frederick was an independent contractor not working within the course and scope of his duties at the time of the accident. In support of the motion, Boone submitted a different affidavit by David Boone and a copy of its contract with Mr. Frederick. It later submitted excerpts from Mr. Frederick’s deposition with a supplemental memorandum in support of its motion. In October 2008, following oral arguments, the trial court granted the motion; it gave no written or oral reasons for its ruling.
 

 The plaintiffs appeal the summary judgment dismissing Boone from the suit.
 
 [2]
 

 |SLAW
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.
 
 Schroeder v. Board of Supervisors of Louisiana State University,
 
 591 So.2d 342 (La.1991);
 
 Costello v. Hardy,
 
 2003-1146 (La.1/21/04), 864 So.2d 129. A motion for summary judgment shall be granted if “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
 
 *1019
 
 show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 Generally, masters and employers are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed. La. C.C. art. 2320;
 
 Ellerbe v. Albertsons, Inc.,
 
 43,452 (La.App.2d Cir.8/13/08), 989 So.2d 303. A principal generally is not liable for the offenses committed by an independent contractor while performing its contractual duties.
 
 Ledent v. Guaranty National Insurance Co.,
 
 31,346 (La.App.2d Cir.12/28/98), 723 So.2d 531. The fact that the contract between the parties stated that it established a relationship of principal and independent contractor is not dispositive of the issue; that designation is not binding or controlling on the rights of third parties.
 
 Ellerbe, supra.
 

 The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis.
 
 Tower Credit, Inc. v. Carpenter,
 
 2001-2875 (La.9/4/02), 825 So.2d 1125;
 
 McLeod v. Moore,
 
 44,022 (La.App.2d Cir.4/8/09), 7 So.3d 190;
 
 Ellerbe, supra.
 

 The Louisiana Supreme Court has found the following factors to be relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
 
 Hickman v. Southern Pacific Transport Company,
 
 262 La. 102, 262 So.2d 385 (1972).
 

 The most important inquiry is whether the principal retained the right to control the work. When applying this test, it is not the supervision and control actually exercised that is significant; the important question is whether, from the nature of the relationship, the right to do so exists.
 
 Hickman, supra; McLeod, supra; Ellerbe, supra; Ledent, supra.
 

 EVIDENCE
 

 According to the deposition testimony of Mr. Frederick, he started his own business in December 2006. He described himself as working “through” Boone but not “for” Boone. Boone sent him to the Goodrich site in December 2006.
 

 |sOn January 21, 2007, Mr. Frederick and Boone entered into a written “independent contractor agreement.” It stated:
 

 David Boone Oilfield Consulting, Inc., desires each Contractor to understand that under this agreement, each Contractor is Independent, Separate, and apart from David Boone Oilfield Consulting, Inc. and is responsible for [any] and all FICA, Federal and State Income Taxes, and any and all other Employment and/or Building taxes owed on monies earned while under contract with David Boone Oilfield Consulting, Inc. Under this agreement, it is understood that each Independent Contractor is totally independent from David Boone Oilfield Consulting, Inc., and therefore, is not covered by David Boone Oilfield Consulting, Inc. State Unemployment tax and should also furnish David Boone
 
 *1020
 
 with a copy of their Worker’s Compensation Insurance, if available. The contractor is required to furnish his own tools and transportation to the job site. This agreement may be terminated by either Party upon written notice of at least (10) working days prior to date of termination.
 

 I/We have read this agreement and I/We clearly understand All the provisions contained therein. This agreement was explained, in full and with all implications, to me before signing and I acknowledge receipt of a copy of this agreement and all statements contained therein.
 

 The contract was signed by Mr. Frederick and by Mr. Boone on behalf of David Boone Oilfield Consulting, Inc. Although there were spaces for witnesses, none signed.
 

 According to Mr. Boone’s affidavits, the intent of the agreement was to establish Mr. Frederick as an independent contractor, not a Boone employee, to work at the Goodrich work site. As stated in the agreement, Mr. Frederick was required to provide his own tools and transportation to the job site. Mr. Boone also stated that Boone did not have the authority to control Mr. Frederick’s work or direct him as to how work was to be done. Mr. Frederick was paid after submitting a statement of his work hours and expenses to Boone; in turn, Boone invoiced Goodrich. Neither Boone nor Goodrich ^withheld any FICA, state or federal income taxes, or any business or other taxes. Mr. Frederick was paid a day rate of pay, rate of cell phone usage, and mileage while he was “on the clock.” He was not paid mileage or any compensation when he was “off the clock.” Also, Mr. Boone stated that Boone did not pay or reimburse Mr. Frederick for any expenses for meals in connection with his work or his contract with Boone.
 

 Mr. Frederick testified that he kept up with his daily work on a computer before the accident and in a statement book after-wards. He believed that other persons working on the site advised him of the going rate and showed him how to write out his statements. Mr. Frederick would send his statements to Boone; after Goodrich paid Boone, Boone would pay him. Mr. Frederick testified that Boone did not pay his medicals or withhold his taxes.
 

 According to Mr. Frederick’s deposition, the day after Mr. Boone called him about the Goodrich job, he went to the site where he checked pressures and production and did troubleshooting on oil and gas wells. There was no Goodrich person there for him to speak with before he started. Another contractor who was present at the site told him what Goodrich wanted them to do. Mr. Frederick testified that he had been in the business for 13 years. Consequently, he was capable of doing whatever was requested. Due to his knowledge, he did not need anyone to tell him exactly how to perform the work. He testified that he did not report to anyone, including Mr. Boone.
 

 At the time he began the Goodrich job, Mr. Frederick lived in Kilgore, Texas. A trailer was provided on the Goodrich site and workers were allowed use of it. While he was not required to stay there, Mr. Frederick testified that|7he did so until he moved to Shreveport. Since moving to Shreveport, he stated that he had not stayed in the trailer.
 

 On the day of the accident, Mr. Frederick finished a 12-hour shift at 5:00 a.m. He then stayed in the trailer until about 11:00 a.m., when he got up and drove toward Kiekapoo in his personal vehicle to get something to eat. The accident at issue in the instant case occurred when he was en route to the Kiekapoo Cafe. He was not due to return to work until 5:00 p.m. Mr.
 
 *1021
 
 Frederick testified that he was paid for his day rate, mileage, and a day rate for use of his cell phone; however, he paid for his own food.
 

 DISCUSSION
 

 As previously noted, the distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis. Our
 
 de novo
 
 review of the evidence presented pursuant to Boone’s motion for summary judgment convinces us that Mr. Frederick was an independent contractor for whom Boone had no liability under the circumstances of the instant case.
 

 Mr. Frederick had a written contract with Boone which could be terminated by either party upon 10 days’ notice. It required that Mr. Frederick provide his own tools and transportation to the work site. The contract also provides that he was responsible for all of his own taxes.
 

 Mr. Frederick’s duties at the Goodrich site consisted of monitoring oil and gas wells for their pressures and production, as well as performing any necessary troubleshooting. He learned the skills he used in this job during the 13 years he worked in the oil and gas industry. He did not require supervision, |8and there is no evidence in this record establishing that Boone exercised any control over the manner in which he performed his duties at the Goodrich site. Moreover, the record does not suggest that Boone had the right to exercise any such control. Also, Mr. Frederick did not report to Boone.
 

 Additionally, the evidence set forth in this record demonstrates that Mr. Frederick charged a day rate plus mileage, and received a daily rate for the use of his cell phone. He frequently used his cell phone to communicate with another independent contractor who had different duties and took care of the site; apparently they shared information about the wells.
 

 In opposition to Boone’s motion for summary judgment, the plaintiffs contend that Mr. Frederick’s deposition testimony and his cell phone records reveal discrepancies as to the time he got up on the morning of the accident. Also, they argue that the lack of witnesses to the contract between Boone and Mr. Frederick is somehow suspicious.
 
 [3]
 
 However, these matters are not material to the ultimate issues to be resolved.
 

 The evidence submitted in connection with this summary judgment shows no grounds for imposing liability upon Boone for the torts of Mr. Frederick. The relationship that existed between them was that of principal and independent contractor. Therefore, like the trial court, we find that summary judgment in favor of Boone is appropriate.
 

 Even assuming
 
 arguendo
 
 that Mr. Frederick was an employee, not an independent contractor, the evidence still does not support an imposition of | ¡liability on Boone. An employee going to or coming from work is generally not considered as acting in the course and scope of employment so as to make the employer liable to third persons for the employee’s negligence. Exceptions may apply when the employer provides, or pays the employee for, transportation to and from work, or when the operation of the vehicle was incidental to some employment responsibility.
 
 Davis v. Green,
 
 44,033 (La.
 
 *1022
 
 App.2d Cir.2/25/09), 5 So.3d 291, writ
 
 denied,
 
 2009-0984 (La.6/19/09), 10 So.3d 742. As previously noted, Mr. Frederick was paid a day rate of pay, a rate for cell phone usage, and mileage while he was “on the clock”; he was not paid mileage or any compensation when he was “off the clock.” At the time of the accident, Mr. Frederick was “off the clock,” away from the work site, and on his way to get something to eat during his personal time between shifts. He had no food allowance, and he was not required to live on the work site premises. He was not on any mission or errand for Boone. The instant case is readily distinguishable from
 
 Michaleski v. Western Preferred Casualty Company,
 
 472 So.2d 18 (La.1985), which involved an oil company employee who had an auto accident while returning to the work place from a necessary trip to eat during a “seven days on” employment period. That employee said he was expected to stay in a trailer at the rig site. Also, he was provided with a food and gas allowance because meals or groceries had to be obtained away from the rig site.
 

 1 ^CONCLUSION
 

 We affirm the trial court ruling granting summary judgment in favor of David Boone Oilfield Consulting, Inc. Costs of this appeal are assessed against the appellants.
 

 AFFIRMED.
 

 [1]
 

 . Ms. White filed on behalf of herself for her own injuries and the loss of her two children; she also sued on behalf of her minor child, Lalravious Thomas, who suffered the loss of his father, Marion Thomas.
 

 [2]
 

 . In February 2009, the plaintiffs settled with Mr. Frederick and State Farm, and they were dismissed from the suit with prejudice.
 

 [3]
 

 . While the existence of a contract is a relevant factor in determining whether an independent contractor situation exists, there is no requirement that the contract be in writing, much less witnessed. See and compare
 
 Tate v. Progressive Security Insurance Company,
 
 2008-0950 (La.App. 4th Cir.1/28/09), 4 So.3d 915.