STEWART, J.
liThe plaintiff, Ron Webb (“Webb”), sued the defendant, Roofing Analytics, LLC (hereafter “RA”), for unpaid wages, penalties and attorney fees. The trial court found in Webb’s favor and awarded him $16,175.25 in unpaid wages, $9,726.30 in penalty wages, $31,250 in attorney fees, and $1,285.46 in costs. Alleging fraud and ill practices, RA filed a motion for a new trial. Following the trial court’s denial of its motion, RA filed this appeal and Webb answered to seek an increase in attorney fees for the appeal. For the reasons explained in this opinion, we affirm in all respects and award additional attorney fees in favor of Webb.
*759 FACTS
On December 1, 2011, Webb filed suit against RA, a business that sold new roofs and repairs to insured homeowners in storm-damaged areas. RA collected the insurance payments and deductibles from the homeowners for the roofing work, and it subcontracted the labor for the new roofs or repairs. Webb’s petition alleged that he was employed by RA from about May 1, 2010, until June 10, 2011. The record shows that his title was “Insurance Claims Specialist.” Webb alleged that his wages were based on commissions and that he was owed commissions totaling $18,718.06 when he ended his employment with RA. On August, 30, 2011, Webb, through counsel, made an amicable demand on RA for payment, but RA refused to pay. Webb alleged that RA had previously acknowledged that it owed him commissions; therefore, it had no good faith basis for refusing to pay. Pursuant to La. R.S. 23:631 et seq., Webb sought to be awarded the unpaid commissions, penalty wages, attorney fees, and costs.
| ¡Answering Webb’s petition, RA denied that Webb was ever an employee or that he was owed any wages. RA asserted that Webb was an independent contractor. It also asserted that Webb’s wife, Lauren Webb (“Mrs. Webb”), was involved in Webb’s business and that, at their request, checks from RA were made out to her. In a supplemental answer, RA asserted that Webb lied in his petition about being an employee. RA made allegations suggesting that Webb and Jeff Foster (“Foster”), who managed RA’s Shreveport branch, conspired against its interest and sought to start their own business before Webb’s relationship with RA ended.
RA also filed a reconventional demand against Webb and a third-party demand against Mrs. Webb, alleging that they conspired to convert and / or converted funds by cashing checks from customers without authorization. RA also alleged that it actually overpaid Webb in the amount of $4,002.83. RA sought an undetermined amount from the Webbs for the checks they allegedly cashed without its permission.
What was meant to be a summary proceeding was tried over three days. The primary issues were whether Webb was an employee and the amount of unpaid commissions, if any, owed to him. The trial court heard testimony from both Webbs; Brad Cook (“Cook”), RA’s chief witness; Scott Patton (“Patton”), who worked for RA for a short time during the summer of 2010; and Wesley Marshall (“Marshall”), a member of RA, whose brief rebuttal testimony was presented to show prior inconsistent statements by Webb. Both parties introduced numerous exhibits.
|sOn May 16, 2012, the trial court rendered a written ruling that thoroughly addressed and disposed of this “convoluted mess”[1] in favor of Webb. The trial court completely rejected the testimony of Cook, the key witness for RA. The trial court found Cook lacking in credibility and described his testimony as self-serving, internally inconsistent, and contradictory. The trial court also rejected the efforts of RA to characterize Webb as a liar or unethical. It generally found RA’s various defenses and claims to be untenable and without any merit.
Having rejected Cook’s testimony, the trial court found no merit to RA’s claim that Webb was an independent contractor without any rights under La. R.S. 23:621 et seq. Instead, the trial court found that Webb had been RA’s employee. This find *760 ing was based, in part, on a document entitled “Schedule for Percentage of Payment and Advancement” that was signed by Webb and Foster on May 11, 2010, and introduced by Webb as Plaintiffs Exhibit D. The trial court found that this document referred to duties expected of Webb and the consequences that would result from his failure to perform his duties. Though RA sought to prove that Webb was an independent contractor based on the involvement of his wife in their business relationship, the trial court accepted the Webbs’ explanation that Mrs. Webb handles the paperwork and banking for their family and is better at these tasks. The trial court recognized that the situation was “a bit unorthodox” but concluded that the Webbs’ division of labor in their family did not preclude a finding that Webb was an employee.
|4The trial court also found that Webb produced sufficient proof of the amount of unpaid commissions owed to him. The trial court referenced Plaintiffs Exhibit H, which included calculations of commissions due from each job sold by Webb. At trial, Webb reduced the amount claimed to $16,175.25 by crediting draws and other amounts received from RA. The trial court noted that “the Webbs did the best job that anyone could do in attempting to reconstruct what happened” and that RA did not produce any credible evidence to contradict their proof. Therefore, the trial court found that Webb was' entitled to judgment in the amount of $16,175.25.
The trial court found no merit to any of RA’s defenses and found that it failed to conduct any accounting until March 2012, when it produced the “unintelligible” accounting introduced as Defendant’s Exhibit 4. The trial court concluded that RA did not act in good faith and that Webb was entitled to statutory penalties in the amount of $9,726.30. Finally, the trial court awarded attorney fees totaling $31,250, noting that the case was complicated “due to the position taken by the defendant” and that Webb’s counsel had to “spend a-great deal of time on this case.” A judgment in accordance with the written ruling and assessing costs to RA was signed by the trial court on May 29, 2012.
On June 5, 2012, RA filed a motion for a new trial seeking to nullify the judgment for fraud and ill practices. As grounds, RA alleged that Webb’s counsel made misrepresentations to the trial court concerning the availability of certain canceled checks requested during discovery and that the trial court relied partly on this misrepresentation in finding that Webb | ¿met his burden of proof at trial. RA also alleged that Webb committed perjury by testifying contrary to what he had previously stated under oath during a deposition. In response to the motion for a new trial, Webb filed a motion for sanctions against RA and its counsel.
After arguments, the trial court denied RA’s motion. It found no perjury by Webb and no deception by Webb’s counsel regarding discovery. Webb dismissed his motion for sanctions without prejudice. This appeal by RA followed, and Webb answered the appeal to seek additional attorney fees for defending the appeal.
DISCUSSION
RA presents seven assignments of error for review. These pertain to the denial of its motion for a new trial, the denial of its right to impeach Webb with his prior inconsistent statements in a deposition, the finding that Webb was an employee, the finding that Webb proved his damages, and the award of statutory penalties and attorney fees. We will address each issue as presented in the appellate brief, though related issues will be grouped together.

*761
Issue 1: Denial of New Trial

Asserting that Webb lied under oath, RA contends that the trial court erred in not granting a new trial based on fraud or ill practices. RA seeks to have the judgment in favor of Webb declared a nullity and a new trial granted.
In Pollock v. Talco Midstream Assets, Ltd., 44,629 (La.App.2d Cir.9/23/09), 22 So.3d 1033, this court held that alleged grounds for [¡¡nullification could be considered through a motion for a new trial and did not have to be raised in a separate action for nullity. However, the decision of whether to grant a motion for a new trial is a matter within the trial court’s discretion. Atkins v. Louisiana Mut. Medical Ins. Co., 47,374 (La.App.2d Cir.11/7/12), 105 So.3d 781, writ denied, 2013-0341 (La.4/1/13), 110 So.3d 585.
Nullification based on fraud or ill practices under La. C.C.P. art.2004 is not limited to cases of actual fraud or intentional wrongdoing. Rather, it encompasses all situations where a judgment is rendered through some improper practice or procedure. Kem Search v. Sheffield, 434 So.2d 1067 (La.1983). Whether a judgment has been rendered through fraud or ill practices and is subject to nullification depends on (1) whether the circumstances under which the judgment was rendered show that the litigant seeking relief was deprived of legal rights and (2) whether it would be unconscionable or inequitable to enforce the judgment. Belle Pass Terminal, Inc. v. Jolin, Inc., 2001-0149 (La.10/16/01), 800 So.2d 762. A judgment will not be annulled if the alleged fraud or ill practice pertained to a matter of no relevance to the basis of the decision. Id.
In asserting that Webb lied, RA refers to four specific instances where it claims that his trial testimony differed from statements he made during a deposition.[2] First, RA claims that Webb lied under oath by testifying that Cook and Marshall stated that Foster was a general manager when Webb had testified in his deposition that he never heard Cook or Marshall say this [7about Foster. Even assuming that Webb’s testimony did differ from what he previously stated during a deposition, Foster’s title is of no relevance to the determination that Webb was RA’s employee and entitled to collect unpaid commissions. In fact, Cook eventually conceded, after much evasiveness, that Foster was a general and/or regional manager.
Second, RA asserts that Webb stated during his deposition that he was to be paid based on each job, but he then testified at trial that he should have been paid based on time. At trial, counsel for RA asked Webb, “You deny that your pay was based on the job, not time; correct?” Webb answered, “Yes.” It is obvious from the record that Webb either misunderstood the question or mistakenly answered in the affirmative. Webb has claimed, from the initial filing of his petition, to be owed commissions by RA. He has never claimed to have been paid based on time or to be entitled to such pay.
Third, RA claims that Webb stated in his deposition that he wrote one contract for his new roofing business prior to ending his relationship with it, whereas he testified at trial that he did not write any such contracts. RA argues that this is a material misrepresentation because it shows that Webb was in business for himself during the time he was allegedly employed by it. The record does not support *762 RA’s claim that Webb was in business for himself during his employment with RA. Webb testified that he and Foster had discussions about starting a roofing business together. These discussions took place before Webb terminated his employment with RA, but their plans did not come to fruition. Webb did eventually start his own ^business, but the record does not establish that he did this while employed by RA. Even if one contract had been written for a new business, this would have little to no bearing on whether Webb had been RA’s employee and on RA’s obligation to pay the commissions that it owed Webb for jobs he sold on its behalf.
Fourth, RA asserts that Webb testified at trial that he quit, but stated in his deposition that he was terminated. RA further asserts that the distinction between quitting and being terminated is key in determining whether someone was an employee. We disagree. Both could quit a job or be terminated. The relevant distinction, as discussed infra, is that an employee is, in the absence of a contract providing otherwise, free to quit at will or is subject to termination at will by his employer, whereas an independent contractor relationship would typically subject the parties to liability in the event of a breach of the contract resulting from termination or resignation before the work is complete. Moreover, whether an employee resigns or is terminated has no bearing on the employer’s duty to pay the amount due under the terms of the employment as required by La. R.S. 28:631.
Describing the above allegations as involving “knit-picky little minor details,” the trial court rejected RA’s claim that Webb perjured himself. We agree. None of these four instances show fraud or ill practice by Webb in obtaining the judgment. The alleged “lies” are not relevant to the determination of whether Webb was an employee and whether he was owed unpaid commissions.
|aRA also argues that an “unintentional misrepresentation” by Webb’s counsel to the trial court concerning discovery constitutes fraud or ill practice in obtaining the judgment. In discovery, RA sought information on all of Webb’s income since May 1, 2010, along with production of all canceled checks and other evidence of such income. Counsel for Webb responded that the request was overly broad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. RA also requested the names of all Webb’s customers and production of everything Webb had concerning these customers. Webb’s counsel responded that the customer files could be viewed at his office or that arrangements could be made to copy the files at RA’s expense. Apparently, any copies of checks received by Webb from these customers, which appears to be what RA was actually seeking, would have been in the files. RA declined to take advantage of either option.
In reviewing the relevant discovery requests and responses, we find no misrepresentation by Webb’s counsel regarding whether RA had access to Webb’s customer files and any checks contained therein. Though RA complains that Webb’s counsel objected to producing copies of “canceled checks,” the record does not show that it filed any motion to compel discovery of these items.
The record does not support RA’s claim of fraud or ill practice. It was not deprived of any legal rights, and it is neither unconscionable nor inequitable to enforce the trial court’s judgment. We find no abuse of discretion by the trial court in denying the motion for a new trial.

*763
Issue 2: Exclusion of Webb’s Deposition

RA asserts that the trial court erred by denying it the right to impeach Webb with extrinsic evidence of his prior inconsistent sworn statement. RA is referring to a deposition that had not been completed prior to trial, was ruled inadmissible by the trial court, and was not proffered.
Referring to La. C.C.P. art. 1636, this court has previously stated, “It is incumbent upon the party who contends its evidence was improperly excluded to make a proffer, and if it fails to do so, it waives its right to complain of the exclusion on appeal.” Hudspeth v. Smith, 42,647, p. 8 (La.App.2d Cir.11/7/07), 969 So.2d 793, 798. In the absence of a proffer of the incomplete deposition, we will not consider on appeal the complaint that the trial court improperly ruled it inadmissible. But we do observe that the record supports the trial court’s ruling. The record shows that Webb’s deposition was started by counsel for RA but stopped before Webb’s own counsel had the opportunity to ask questions. The deposition was twice rescheduled, but RA canceled both times. Explaining the cancellations to the trial court, counsel for RA stated, ‘Tour Honor, the reason the depositions were canceled are privileged between my clients, and I think it would prejudice my clients to disclose that.” By not completing the deposition, Webb was not allowed the opportunity to explain or correct any answers he gave under questioning by RA’s counsel, and he was deprived the opportunity to read and sign the deposition as provided by La. C.C.P. art. 1445. These factors support the trial court’s exclusion of the incomplete deposition.
| tissue No. 3: Finding that Webb was an Employee
RA asserts that the trial court erred in finding that Webb was an employee. It asserts that the Webbs’ testimony was so “internally inconsistent” that their testimony cannot constitute proof. It also asserts that the trial court’s refusal to allow the impeachment evidence (the incomplete deposition) prevented it from making a proper credibility determination. RA contends that the trial court’s improper exclusion of Webb’s deposition means that a de novo review is warranted.
We find no merit to RA’s contention that a de novo review is warranted. As previously stated, because the deposition was not proffered, the issue of its exclusion is not properly before this court on appeal. The determination that Webb was an employee, rather than an independent contractor, is a factual determination that is decided on a case-by-case basis and is reviewed under the manifest error standard. Jeansonne v. Schmolke, 2009-1467 (La.App.4th Cir.5/19/10), 40 So.3d 347.
Under the manifest error standard, the reviewing court does not determine whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Stobart v. State, through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Findings based on credibility determinations are entitled to great deference. Foley v. Entergy Louisiana, Inc., 2006-0983 (La.11/29/06), 946 So.2d 144. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Stobart, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). But a finding based on a credibility determination may |iabe manifestly erroneous where documents or objective evidence so contradict the witness’s story or the story is so internally inconsistent or implausible that a reasonable trier of fact would not give it credence. Foley, supra; Rosell, supra. Still, if the findings of fact are reasonable *764 in light of the record viewed in its entirety, the appellate court may not reverse even if, acting as a trier of fact, it would have weighed the evidence differently. Stobart, supra. Where there are two permissible views of the evidence, the trier of fact’s choice cannot be manifestly erroneous or clearly wrong. Id.
La. R.S. 23:631 provides that upon the discharge or resignation of “any laborer or other employee of any kind whatever,” the employer shall pay the amount then due under the terms of employment. La. R.S. 23:631 (A)(1)(a) and (b). Whether someone is an employee or an independent contractor is determined on a case-by-case basis. Jeansonne, supra. The major factor for determining whether there is an independent contractor or employer-employee relationship is the employer’s control over the work. Hickman v. Southern Pac. Transport Co., 262 La. 102, 262 So.2d 385 (La.1972). The court explained that “it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists.” Id. at 391.
In addition to the power of control, other factors indicative of an employer-employee relationship include selection and engagement, the payment of wages, and the power of dismissal. Jeansonne, supra. No single factor controls the determination. Id. The totality of the | isrircumstances must be considered, and the party seeking to establish that an employer-employee relationship exists bears the burden of proof. Id. Notably, our courts have regarded commissioned salespeople as employees, not as independent contractors. Tri-Star of Louisiana v. Touchet, 520 So.2d 989 (La.App. 3d Cir.1987); Gresham v. Speights, 133 So.2d 846 (La.App. 2d Cir.1961).
An independent contractor relationship presupposes a contract between parties for a specific piecework as a unit to be done according to the independent contractor’s own methods, without control and’ direction by the principal except as to the final result. The independent contractor’s work is of an independent nature allowing him to employ nonexclusive means in accomplishing it. As agreed upon by the parties, there is a specific price for the undertaking, and there is a specific time or duration. Neither side may terminate or discontinue at will without risk of incurring liability for the breach. Hickman, supra at 390-391; Jeansonne, supra; Ledent v. Guaranty Nat. Ins. Co., 31,346 (La.App.2d Cir.12/28/98), 723 So.2d 531.
Cook testified that, during a dinner at a steakhouse, he and Webb entered a verbal contract for Webb to be an independent contractor. He claimed that Webb later signed an independent contractor agreement, but no such contract signed by Webb was offered into evidence. Even so, the existence of an independent contractor agreement is not dispositive of whether one is an independent contractor or an employee under the law. Powell v. Fuentes, 34,666 (La.App.2d Cir.5/9/01), 786 So.2d 277, writ denied, 2001-1675 (La.9/21/01), 797 So.2d 674; Stroder v. Horowitz, 34,048 (La.App.2d Cir.12/20/00), 775 So.2d 1175.
In rejecting RA’s claim that Webb was an independent contractor, the trial court found that RA’s primary witness, Cook, lacked credibility. The record supports this finding and does not show, as argued by RA, that the Webbs’ testimony was so inconsistent as to lack credibility.
The record shows that Webb met the burden of proving that he was an employee. He signed a written agreement on May 11, 2010, around the time he began working for RA, entitled “Schedule for *765 Percentage of Payment and Advancement.” This agreement, which was also signed by Foster as general manager, identifies Webb as an “Insurance Claims Specialist” and sets forth the requirements for his advancement from a 20 percent commission to a maximum of 35 percent. The agreement states that “[n]egative counseling may hinder advancement,” that “[t]he severity of the incidents will be directly proportional to the corrective action taken,” and that appeals from negative counseling can be made to higher management levels. Failing to return customer calls or to respond timely to emails and texts, as well as causing conflicts with homeowners and coworkers are identified as incidents that could result in negative counseling. Though Cook denied that this agreement pertained to RA, Scott Patton, a witness for RA, testified that it looked like the same agreement he signed when he went to work for RA for a short time during the summer of 2010. This agreement establishes RA’s right as the employer to exercise control over the work done by Webb.
|1fiWebb sold roofing jobs to insured customers in the Shreveport and Bossier City areas and was to be paid commissions based on his sales. His business cards identified him as an insurance claims specialist with RA, not as an independent contractor. The cards had contact information for RA’s Shreveport office. Webb explained that RA had a chain of command. He reported to Foster, who reported to Cook. He testified that he was instructed to solicit in certain areas, such as neighborhoods that had experienced hailstorms. Webb signed contracts with customers on behalf of RA. These were form contracts provided by RA. Once a customer contracted with RA, Foster obtained the necessary work permits, purchased the materials, and hired crews to do the work. Webb’s testimony indicates that he sometimes performed these duties when Foster was unavailable to do so.
One atypical aspect of this case is the involvement of Mrs. Webb in Webb’s employment with RA. As shown by over 200 pages of emails, texts, and other correspondence introduced into evidence by Webb, which detail his yearlong relationship with RA, Mrs. Webb often communicated on his behalf with RA, primarily about his pay or lack thereof. Webb testified that his wife helped him because she is better at handling bookkeeping and paperwork, whereas he is not good at these things. The record also indicates that Mrs. Webb had ready access to a computer all day, while Webb was usually out soliciting customers, dealing with insurance adjusters, and making sure the work customers contracted for was being done. The Webbs also asked that RA make Webb’s commission checks out |into Mrs. Webb, who testified that she handles the family’s banking. RA agreed to do this and has not claimed to have had any employment-related relationship with Mrs. Webb. Like the trial court, we view this arrangement as á “bit unorthodox,” but find that it does not preclude the factual finding that Webb was an employee.
Contrary to RA’s argument, none of the factors indicative of an independent contractor relationship are present here. There was no contract between the parties for a specific piecework as a unit, no specific price for any such undertaking, and no agreed upon time or duration for such work. Neither Webb nor RA was subject to liability for breach upon termination of their relationship. Though Webb was not subject to a particular daily schedule, the record does indicate that RA had the right to control Webb in the performance of his job.
*766 The testimony and evidence at trial establishes that Webb was a commissioned salesman for RA and did not work as an independent contractor. From our close review of this record, we find no manifest error in the trial court’s finding that Webb was an employee.

Issues U and 5: Proof of Entitlement to Payment Due

RA argues that the trial court erred in finding that Webb proved his entitlement to “damages,” apparently referring to the amount of unpaid commissions owed upon his resignation/termination. RA complains that Webb did not call Foster to testify and that he did not introduce copies of customer checks that he received and cashed. Therefore, RA contends that such evidence must be presumed to have been unfavorable to Webb and that 117the Webbs’ self-serving testimony, alone, was not sufficient to prove the amount of “damages” by a preponderance of the evidence. We find no merit to this argument.
RA bases it argument on jurisprudence pertaining to proof of loss of earnings or earning capacity. In general, a plaintiffs detailed, though uncorroborated, testimony as to loss of earnings is sufficient support for an award, but such testimony will not suffice if it is shown that corroborative evidence was available but was not produced. Mormon v. Stine, Inc., 95-615 (La.App.3d Cir.11/2/95), 664 So.2d 600; Miller v. Mahfouz, 563 So.2d 1223 (La.App. 1st Cir.1990), writ denied, 569 So.2d 967 (La.1990).
This is not a loss of earnings case, and there is sufficient evidence to support the trial court’s factual finding that Webb was entitled to $16,175.25 in unpaid commissions. First, we note that RA cannot complain that Webb did not call Foster to testify when it did not as well. Foster was RA’s manager in Shreveport and was represented by RA’s counsel when its relationship with Webb terminated. Second, Webb introduced evidence to support his testimony as to the amount of unpaid commissions owed by RA. For purposes of La. R.S. 23:631, commissions are considered wages. Dugas v. Aaron Rents, Inc., 2002-1276 (La.App.3d Cir.3/5/03), 839 So.2d 1205. To support his claim, Webb introduced Exhibit H, which included summary sheets for each of his customers. These summaries show the total amount collected from the insurer and the homeowner’s deductible minus the cost of materials and labor. A 25 percent commission was calculated on the net amount remaining. Mrs. Webb, who began keeping records and | ^rebuilding files on Webb’s customers in March 2011, testified that some of the figures were estimates, that some were based on documents from the insurers, and that she did not factor in “supplemental payments” by insurers, which would have increased the amount of commissions due. Though the customer files compiled by the Webbs and upon which the summaries were based were not offered into evidence, these are the same files that, as discussed supra, were made available to RA during discovery. Also, as noted by the trial court, RA did not object to the admission' of Exhibit H into evidence.
Though RA complains that the Webbs failed to produce corroborating evidence, it too failed to produce any backup evidence for its financial summaries. In fact, Cook testified that RA’s bank records and records reflecting payments to Webb had been lost. However, email offered as evidence shows that Cook assured Webb in the latter part of May 2011 that he would be paid what he was owed once all jobs were fully collected. Webb was likewise assured of payment upon completion of all jobs in a June 14, 2010, letter from counsel for RA.
*767 The record shows that RA was a poorly run business. The plethora of emails and communications introduced by Webb show ongoing problems with collecting his commission payments over the course of his employment with RA. The trial court noted that the Webbs did the best they could in attempting to reconstruct what happened. We agree. The trial court ultimately based its award on the summaries in Plaintiff’s Exhibit H and testimony that Webb did receive a few draws and other small payments |iaduring his year of employment. Viewing this record as a whole, we find no manifest error in the trial court’s award of $16,175.25 for unpaid commissions.
As an additional argument, RA asserts that Webb did not prove his claim “when the record shows that Lauren Webb performed most of the work, but she admitted that she was not an employee of Roofing Analytics, LLC.” The record does not show that Mrs. Webb did most of the work. It does show that she often communicated, mostly by email, with Foster, Cook, and other RA personnel on Webb’s behalf. The record also shows that the assistance she provided to her husband regarding his job was done with RA’s full knowledge and acquiescence. Mrs. Webb’s efforts to assist her husband have no bearing on whether he proved entitlement to unpaid commissions. This argument is wholly without merit.

Issue 6-7: Statutory Penalties and Attorney Fees

To recover penalties under La. R.S. 23:632, a claimant must establish that wages were due and owing, that demand for payment was made where the employee was customarily paid, and that the employer did not pay upon demand. Becht v. Morgan Bldg. & Spas, Inc., 02-2047 (La.4/23/03), 843 So.2d 1109, cert. denied, 540 U.S. 878, 124 S.Ct. 289, 157 L.Ed.2d 142 (2003); Jeansonne, supra. Because La. R.S. 23:632 is penal in nature, it must be strictly construed. Smith v. Acadiana Mortg. of Louisiana, Inc., 42,795 (La.App.2d Cir.1/30/08), 975 So.2d 143. A claim for penalty wages may be defeated by an equitable defense. Id. However, this requires a defense that is in good faith and nonarbitrary so as to provide a reasonable | ?nbasis for resisting liability. Id., Carriere v. Pee Wee’s Equipment Co., 364 So.2d 555 (La.1978).
Reasonable attorney fees shall be allowed and taxed as costs against the employer for a well-founded suit filed by the employee after the lapse of three days from the time of making a first demand following discharge or resignation. La. R.S. 23:632. A “well-founded suit” is one where the employer succeeds in recovering wages. Jeansonne, supra. In such cases, an award for reasonable attorney fees is mandatory. Id.
RA asserts there was a bona fide dispute as to the amount of commissions due Webb. It claims not to have known how much, if any, money was due Webb, because Webb controlled the money. RA claims that Webb cashed checks intended for it and that it has no way of knowing the value of these checks. In fact, the record shows that Webb did collect and cash checks from customers, mostly for a short time while Foster was away from the country in May 2011. Webb testified, and emails introduced into evidence show, that Webb or his wife cashed the checks, then Webb used the money to buy roofing materials for the jobs and money orders to pay laborers or contractors doing the work. Webb then turned the remainder over to Rick Foster, Foster’s father who acted as manager of the Shreveport branch while Foster was away. The record also shows that this mode of operation was done with Cook’s knowledge. More *768 over, RA introduced as exhibits copies of checks allegedly collected and cashed by Webb along with receipts for money orders from the post office. There is no proof that 121Webb cashed any checks other than these. Nothing in the record supports RA’s outrageous claim that Webb, basically, stole from it.
RA also argues that no penalty wages or attorney fees should have been awarded because Webb did not make a proper demand for payment. RA claims that Webb’s written demand for payment was made to Foster, not to it.
The record shows that Webb’s relationship with RA ended due to lack of payment and an argument with Foster concerning this ongoing issue. Shortly after the argument, defense counsel, purporting to represent both Foster and RA, wrote to Webb on June 14, 2010, concerning the termination of RA’s relationship with him. The letter informed Webb that he would be “paid when all jobs are completed and your pay will be issued twice a month.” The letter also informed Webb that a “Final Invoice Form” would accompany his pay along with “supporting records and a brief explanation of your pay based on performance.” Webb received no pay as promised in this letter. So, on August 30, 2011, Webb, through counsel, wrote to RA through its attorney to demand payment of funds owed “by Mr. Foster, individually, and on behalf of Roofing Analytics, LLC.” Because RA and Foster were represented by counsel in their dealings with Webb, the written demand was properly made by a letter to RA’s counsel. We are not persuaded by the argument that the reference to Foster means that Webb did not make a demand for payment on RA. The letter is clearly a demand for payment made to RA and Foster, who was its Shreveport manager and Webb’s superior. Notably, RA did not sever ties or revoke Foster’s | ^authorization to act on its behalf until March 2012, according to the testimony of Marshall, RA’s rebuttal witness.
The record shows that commissions were due and owing, that a proper demand for payment was made, and that no payment was forthcoming. Therefore, the trial court did not err in awarding penalty wages. Attorney fees were also properly awarded for this well-founded suit.

Answer to the Appeal:

Webb answered the appeal to request an award of attorney fees for appellate work. The trial court awarded $31,250 in attorney fees under the mandate of La. R.S. 23:632. Counsel requests an additional $7,500 for defending this appeal. He bases this on an estimate of 30 hours of preparation and work at a rate of $250 per hour.
It is within the appellate court’s discretion to award or increase attorney fees for defending an appeal. Nesbitt v. Nesbitt, 46,514 (La.App.2d Cir.9/21/11), 79 So.3d 347, writ denied, 2011-2301 (La.12/2/11), 76 So.3d 1178. The skill exercised by the attorney and the time and work done on the appeal are factors considered in determining the amount of the award for attorney fees. Id.
Considering the work required in defending this appeal, which addressed multiple issues and the full scope of the trial court’s judgment, we find that an increase in attorney fees is warranted in the amount of $4,750, bringing the total award of attorney fees in this matter to $35,000.
[^CONCLUSION
For the reasons set forth in this opinion, we affirm the trial court’s judgment and award additional attorney fees to Webb for defense of the appeal. Costs of appeal are *769 assessed against the defendant, Roofing Analytics, LLC.
AFFIRMED.

. The trial court’s ruling notes that one of the witnesses (Cook) described the controversy as such. The trial court agreed with that description, as do we.

. As discussed infra, this deposition had not been completed and was ruled inadmissible at trial.