STEWART, J.
| plaintiffs, Guindolyn and Dale Hopper (“the Hoppers”), sued the defendant, Ven-ator Contracting Group, L.L.C. (“Venator”), under the thedry of vicarious liability for damages stemming from an automobile accident. The Hoppers alleged that Wayne Austin (“Austin”) was a Venator employee in the course and scope of his employment when he caused the accident that injured Mrs. Hopper. The trial court granted a summary judgment in favor of Venator upon concluding that, even if Austin was a 'Venator employee, he was not in the course and scope of his employment at the time of the accident. The Hoppers appealed. From our de novo review of the record, we find there are genuine issues of material fact as to whether Austin was an employee and whether he was in the course and scope of his employment when the accident occurred. Accordingly, we vacate the summary judgment and remand for further proceedings.
FACTS and PROCEDURAL HISTORY
On November 4, 2011, Mrs. Hopper was involved in a four-vehicle accident on Your-ee Drive in Shreveport when a vehicle driven by Austin hit her Lincoln Navigator from behind. The force of the crash propelled her vehicle into the one ahead of her and caused that vehicle to hit another.
The Hoppers filed suit against Austin and his insurer, State Farm Mutual Automobile Insurance Company (“State *11 Farm”), as well as their own uninsured / underinsured motorist (“UM”) insurer, Truck Insurance Exchange (“TIE”). Subsequently, the Hoppers amended their petition to add Venator as a defendant. They alleged that Austin was in the course and scope of his employment by Venator as superintendent of a remodeling ] ¡.project at the Copeland’s Restaurant in Shreveport at the time of the accident. They further alleged that he was communicating .with Venator by cell phone about the project at the moment the collision occurred.
In its answer and in a subsequently filed motion for summary judgment, Venator denied liability and asserted that Austin was an independent contractor on the remodeling project, not its employee. Alternatively, Venator argued that, even if an employee, Austin was not in the course and scope of his employment when the accident occurred. Venator specifically asserted that there was no competent evidence of the alleged cell phone communication at the time of the accident. Venator supported its motion for summary judgment with the affidavit of its president, David G. Schatzberg (“Schatzberg”).
According to Schatzberg’s affidavit, he and Austin conducted negotiations over the telephone in September 2011, which resulted in an oral contract for Austin to be the project superintendent for Venator’s project in Shreveport. They agreed that Austin would work as an independent contractor, not a Venator employee, and that Austin’s role would end upon completion of the Shreveport project. Austin’s duties included overseeing the subcontract tors and ensuring the project stayed on schedule. Austin was responsible for the day-to-day operations of the project, and he was authorized to use whatever reasonable measures he deemed necessary to carry out his responsibilities. Venator provided general oversight of the project from its home office in Michigan and handled financial issues related to the project. Venator paid Austin $1,2501 sper week, regardless of the number of hours he worked. Venator also agreed to pay for Austin’s hotel room while he was in Shreveport, as well as mileage for his initial travel to Shreveport from his home in Colorado and his return to Colorado upon completion of the job. Venator provided no other compensation or benefits. It did not withhold taxes from Austin’s weekly pay; instead, it provided him a Form 1099 for tax reporting purposes. Austin was not required to use his personal vehicle for any purpose related to the project. He was not required to work set hours, other' than being at the project site as needed or when subcontractors were present. Schatzberg denied that he or any other Venator employee was communicating with Austin when the accident occurred.
Attached to Schatzberg’s affidavit was a copy of a September 2, 2011, email from Schatzberg to Austin confirming their negotiation of Austin’s weekly pay and the mileage as stated above. The email states that Austin would need a digital camera and laptop computer or other way to communicate by email in order to send weekly reports.
In opposition to Venator’s motion for summary judgment, the Hoppers offered an affidavit by Austin, which they asserted established that he was a Venator employee and was driving in the course and scope of his employment at the time of the accident. They argued that the opposing views of Austin’s employment status set forth in his and Schatzberg’s affidavits established a genuine issue for trial.
In his affidavit, Austin asserted that he was an at-will employee, whose job was to implement Schatzberg’s instructions and report back to |4him. Austin denied any contractual agreement designating him an *12 independent contractor, and he stated that Schatzberg suggested he would move on to other projects if things in Shreveport went well. Austin submitted expense reimbursement requests on a form for employees provided by Venator, a copy of which was attached to his affidavit. He was reimbursed for payments he made for materials and supplies purchased for the job. Austin used his personal vehicle to get supplies and materials needed for the project, and he asserted that Schatzberg was aware that he was using his personal vehicle for these errands. Austin relates that a contentious meeting took place on the morning of the accident, during which one of the contractors working on the project was terminated. Pertinent to the accident, Austin’s affidavit states:
After the contentious meeting between Mike Michaelis, Gary Redfern of DECO and me, I drove away from the job site for a short time to clear my head and plan a strategy of how to move ahead with the project and get the work done. After collecting my thoughts and planning how to get the project back on track, I began driving back to the project. As I drove south on Youree Drive, I received a text message from Dave Schatzberg about the project. I was responding to his text message about the Copeland’s project while driving my truck at the moment of the accident involving Mrs. Guin Hopper. My truck rear-ended her Lincoln Navigator, knocking her into the car in front of her in a chain reaction collision.
Austin’s affidavit states that he told the officer who investigated the accident that he had been texting when it occurred. The affidavit states that he was responding to Schatzberg about an “earlier text he had sent me about the Copeland’s project.” The affidavit further states that Schatz-berg requested by email on December 22, 2011, that Austin submit a W-9 form, | fibut Austin forgot to do so. Austin left the project before it was completed, and he incurred no liability for his failure to complete the project.
Among the exhibits attached to Austin’s affidavit was the same email that was attached to Schatzberg’s affidavit. Austin’s exhibits also included a copy of an expense reimbursement form he submitted to Ven-ator and receipts for various supplies paid for by him.
After hearing arguments on Venator’s motion for summary judgment and taking the matter under advisement, the trial court made its ruling in open court on March 21, 2014, in favor of Venator. The trial court determined that even if Austin was an employee, he was not in the course and scope of his employment when the accident occurred. Referring to Austin’s affidavit, the trial court concluded that when Austin left the project site to clear his head and plan a strategy, he was not on any specific mission for Venator or performing any services related to the job. The trial court further concluded that Austin’s claim that he was responding to a text when the accident occurred- was insufficient to show a genuine issue for trial.
A judgment granting Venator’s motion for summary judgment and dismissing the Hoppers’ claims was signed on April 8, 2014. The Hoppers filed the instant appeal and were joined by TIE, which had tendered its full UM policy limits after the trial court’s ruling and then intervened to •seek recovery against Venator. The Hoppers and TIE argue that the trial court erred in granting Venator’s motion by failing to draw inferences from the evidence in the light most favorable to the Hoppers as the nonmoving party, Rby making impermissible credibility determinations, by determining contested subjective facts, and *13 by assuming as fact matters not in evidence. t
DISCUSSION
Summary judgments are reviewed de novo, using the same criteria that govern the district court’s consideration of whether a summary judgment should be granted. Richard v. Hall, 2003-1488 (La.4/23/04), 874 So.2d 131; Capital One Bank (USA) NA v. Thompson, 47,994 (La.App.2d Cir.5/15/13), 115 So.3d 704. We view the record and all reasonable infer ences to be drawn from it in the light most favorable to the nonmoving party. Hines v. Garrett, 2004-0806 (La.6/25/04), 876 So.2d 764, rehearing denied, 2004-0806 (La.9/24/04), 882 So.2d 1134. The judge considering a motion for summary judgment is not to weigh the evidence or determine the truth of the matter; rather, the judge’s role is to determine whether there is a genuine issue of fact for trial. Id.
The party moving for summary judgment bears the burden of proof. La. C.C.P. art. 966(C)(2). However, if the moving party will not bear the burden of proof at trial on the matter at issue on summary judgment, then the movant is merely required to point out an absence of factual support for one or more essential elements of the adverse party’s claim. Id. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, then there is no genuine issue of material fact. Id.
A genuine issue is one about which reasonable persons could disagree. Hines, supra. A material fact is one that potentially insures or |7precludes recovery, affects the ultimate success of the litigant, or determines the outcome of the dispute. Id. Whether a fact is “material” for purposes of summary judgment is determined in light of the substantive law applicable to the particular case. Richard, supra.
The substantive law upon which the Hoppers’ claim against Venator is based arises from La. C.C. art. 2320, which states, in relevant part, “Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.” An employer is vicariously liable for the employee’s tor-tious conduct that occurs within the course and scope of employment. Orgeron on Behalf of Orgeron v. McDonald, 93-1353 (La.7/5/94), 639 So.2d 224; Alford v. State Farm Auto. Ins. Co., 31,763 (La.App.2d Cir.5/5/99), 734 So.2d 1253, writs denied, 99-1435 (La.9/3/99), 747 So.2d 544 and 99-1595 (La.9/3/99), 747 So.2d 548. Whether Austin was an employee or an independent contractor and, if an employee, whether he was in the course and scope of his employment must be decided to determine whether the Hoppers or Venator will prevail.

Employee or Independent Contractor

Distinguishing whether one is an employee or an independent contractor involves a factual determination that is decided on a case-by-case basis. White v. Frederick, 44,563 (La.App.2d Cir.8/19/09), 17 So.3d 1016, writ denied, 2009-2059 (La.11/25/09), 22 So.3d 168. The employer’s right to control the work is the most important factor in distinguishing between ah employee and an independent contractor. Id; (Webb v. Roofing Analytics, LLC, 48,248 (La.App.2d Cir.7/24/13), 121 So.3d 756.
Other relevant factors to be considered were set forth in Webb, supra, as follows:
An independent contractor relationship presupposes a contract between parties for a specific piecework as a unit *14 to be done according to the independent contractor’s own methods, without control and direction by the principal except as to the final result. The independent contractor’s work is of an independent nature allowing him to employ nonexclusive means in accomplishing it. As agreed upon by the parties, there is a specific price for the undertaking, and there is a specific time or duration. Neither side may terminate or discontinue at will without risk of incurring liability for the breach. .[Citations omitted.]
Webb, 48,248, p. 13, 121 So.2d at 764. See also Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (La.1972).
It appears from the trial court’s reasons for granting Venator’s motion for summary judgment that the court did not base its ruling on a finding that Austin was an independent contractor. Our de novo review of the pleadings and the affidavits offered in support of and in opposition to Venator’s motion for summary judgment convinces us that there are genuine issues of material fact on this issue. The affidavits by Schatzberg and Austin set forth differing views of Austin’s status with regard to Venator.
Schatzberg insists that they had an oral agreement for Austin to work as an independent contractor on the Shreveport project. Austin insists he was an at-will employee and that he understood he might work on other projects for Venator if the Shreveport project went well. Schatzberg insists that Austin was responsible for the “day-to-day operations” of the project with authority to use “reasonable measures as he deemed necessary” to ^supervise the subcontractors and make sure the project stayed on schedule. However, Austin states that Schatzberg made all decisions regarding the project and that his job was to “observe, report, coordinate, implement Mr. Schatzberg’s decisions and attempt to keep the project running smoothly.” Though the parties generally agree on the amount of Austin’s'weekly pay, as well as the payment of his hotel room and mileage at the start and end of the job, these facts do not decisively favor either view of Austin’s status. Rather, these facts could be viewed as establishing a specific price for the overall job to be done by an independent contractor or merely as weekly pay and benefits for an employee hired as a project superintendent. Austin’s affidavit states that he left the project before it was complete and that he incurred no liability for his failure to finish the job.
Venator cites White, supra, as a case involving similar facts where this court affirmed a summary judgment in favor of a party, David Boone Oilfield Consulting, Inc., (“Boone”), defending against a vicarious liability claim. As noted, whether one is an employee or an independent contractor is to be decided on the basis of the facts in each case. Similarities do not mandate the same result. Though not alone determinative, Boone and Mr. Frederick, the party for whom Boone was alleged to be vicariously liable, had entered a written “independent contractor agreement.” No such written agreement exists here, and there are opposing accounts of the oral agreement concerning Austin’s work for Venator. In his deposition, Frederick described his many years of experience that allowed him to do the work without anyone telling him what to ' do. Frederick also admitted that |inhe did not report to anyone. Here, Austin’s affidavit suggests that he reported to Schatzberg and took direction from him.
In summation, reasonable persons considering the facts as set forth in the affidavits of Schatzberg and Austin could reach different conclusions on whether Austin was an employee or an independent con *15 tractor. Viewing the record and all reasonable inferences in favor of the nonmov-ing party, the Hoppers, we find there is a genuine issue of material fact as to whether Austin was an employee or an independent contractor.

Course and Scope

Should it be determined that Austin was an employee rather than an independent contractor, Venator cannot be held vicariously liable unless Austin’s tortious conduct occurred within the course and scope of his employment. Candler v. Henderson, 48,441 (La.App.2d Cir.11/20/13), 128 So.3d 587, writ denied, 2013-2980 (La.2/28/14), 134 So.3d 1179. The pertinent inquiry is:
[WJhether the employee’s tortious conduct was so closely connected in time, place and causation to his employment, duties as to be regarded a risk of harm fairly attributable to the employer’s business, as compared to conduct motivated by purely personal considerations entirely extraneous to the employer’s interests.
Richard, 2003-1488, p. 6, 874 So.2d at 138.
Stated another way, an employee is acting within the course and scope of his employment when the conduct is the kind he is employed to perform, the conduct occurs substantially within the authorized limits of time and space, and it is activated at least in part by a purpose to serve the 'employer. Orgeron, supra; Candler, supra. Factors considered in | n determining whether an employee’s conduct is employment-rooted include the employer’s power of control and payment of wages; the employee’s duty to perform the particular act, motivation for performing the act, and the time, place, and purpose of the act in relation to service of the employer; the relationship between the act and the employer’s business, as well • as the benefits the. employer receives from the act; and the employer’s reasonable expectation that the employee would perform the act. Orgeron, supra; Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985).
In its motion for summary judgment, Venator argued that Austin was not in the course and scope of his employment when the accident occurred and that none of the factors mentioned above weigh in favor of such a finding. The Hoppers assert that Austin’s affidavit shows that he was driving in connection with his employment at the time of the accident. In his affidavit, Austin indicates that he was “texting” with or in response to a message from Schatzberg at the very moment of the accident. His affidavit also indicates that he had left the project site after a contentious meeting in order to “clear his head” and plan a strategy to move the project forward after the dismissal of a subcontractor. He was returning to the site when the accident occurred.
In concluding that Austin was not on any employment-related mission or performing any service for the benefit of Ven-ator when the accident occurred, the trial court failed to draw inferences from the evidence in the light most favorable to the Hoppers and determined contested facts concerning Austin’s actions. The general rule is that an employee going to |12or coming from work is not acting within the' course and scope of his employment. Or-geron, supra; White, supra. However, the general rule is not determinative of this matter, because this is not the typical case where an employee is going to work, returning home, or even going out to lunch or an errand during his personal time. The specific facts of this case raise genuine issues concerning whether Austin’s temporary retreat from the project site to “clear his head” and make plans for the benefit of the project can be considered in the course *16 and scope of his employment as project superintendent, if he is found to have been an employee.
Additionally, there is Austin’s claim that he was “texting” about the project at the very moment the accident occurred, and Schatzberg’s counter assertion that he was not in communication with Austin at that time. Whether Austin was responding to a text from Schatzberg when the accident occurred, and whether this act suffices to place him in the course and scope of his employment, are also genuine issues of material fact in dispute. The trial court’s reliance on Reyes v. Hornbeck Offshore Services, L.L.C., 383 Fed.Appx. 442 (5th Cir.2010), is misplaced inasmuch as that case was not designated for publication and is not directly on point. The facts indicate that the employee driver was driving home in his personal vehicle at the end of the day when the accident occurred. Unlike the facts before us, the employee in Reyes did not assert that he was on the cell phone in connection with his job when the accident occurred. Rather, the plaintiff merely speculated that a work-related cell phone call distracted the |1semployee while driving. The court did not find such speculation sufficient to establish a genuine issue of material fact for trial.
Here, the record provides more than mere speculation. Austin stated in his affidavit that he was in fact “texting” in connection with his job at the moment of the accident. Accepting his affidavit as credible and true for purposes of summary judgment, see Garsee v. Bowie, 37,444 (La.App.2d Cir.8/20/03), 852 So.2d 1156, Austin’s affidavit suffices to create a genuine' issue of material fact for trial as to whether his actions at the moment of the accident were within the course and scope of his employment.
Our review of this record convinces us that Venator has not met the burden of pointing out an absence of factual support for one or more elements essential to the Hoppers’ vicarious liability claim. Whether Austin was an employee of Venator’s and, if so, whether his conduct was so closely connected in time, place, and causation to his duties as project superintendent so as to constitute a risk of harm attributable to Venator’s business remain in dispute.
CONCLUSION
For the reasons set forth in this opinion, we find that the trial court erred in granting summary judgment in favor of Venator and in dismissing the Hoppers’ claims against it. We vacate the trial • court’s judgment and remand for further proceedings. Costs of this appeal are assessed against Venator.
VACATED and REMANDED.