PITMAN, J.
I,Plaintiff John David Knight sued Defendants Barney Tucker (individually) and Donald, Tucker, Betts, Fuller & Knight, A.P.A.C., under La. R.S. 23:631, et seq., seeking unpaid wages, 90 days’ penalty wages and attorney fees, and also overtime compensation and liquidated damages under the federal Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 201, et seq. Plaintiff also sought damages for reimbursement of business expenses. The trial court granted *410 Plaintiff relief as to unpaid wages, but denied his claim in all other respects and rendered judgment in favor of Defendants finding that Plaintiff was not an “employee” under La. R.S. 23:631, et seq., or the FLSA, and, thus, was not entitled to any other relief. For the following reasons, we affirm in part, reverse in part the judgment of the trial court and remand.
FACTS
In 2002, Plaintiff, a certified public accountant and sole practitioner in Rayville, Louisiana, was approached by Barney Tucker to begin a working relationship with him at Tucker’s corporation, Donald, Tucker and Betts, A.P.A.C. (“the Corporation”).[1] Tucker suggested to Plaintiff that they form a limited liability corporation (“LLC”), which would be owned 80 percent by the Corporation and 20 percent by Plaintiff. According to their agreement, Plaintiff was to receive an annual salary of $75,000 to be paid in 25 installments, i.e., $3,000 twice a month, with an additional $3,000 due at the end of the year. Plaintiff negotiated that he would be allowed three |2weeks of vacation per year. The parties never signed a written contract formalizing the agreement. In fact, in 2002, they agreed to enter into a partnership with Plaintiffs participation deemed to be at 1 percent and the Corporation’s participation at 99 percent until Plaintiffs issues related to his former business could be resolved.
Thereafter, Tucker applied for a permit with the Louisiana Board of CPAs in 2002 for an LLC named Donald, Tucker, Betts & Knight, LLC, and federal tax returns were filed under that name; however, Plaintiff claims that this LLC was never formed with the Louisiana Secretary of State. Based on this fact, Plaintiff describes the relationship between the parties as a partnership,[2] although the exact relationship between the parties can only be described as unclear. Plaintiff did receive a K-l tax form from 2002 until 2004, indicating that he was considered a partner.
In 2005, after Tucker had the name of the Firm changed to Donald, Tucker, Betts, Fuller & Knight, A.P.A.C, Plaintiff and the other CPAs in the Firm received W-2 forms for tax purposes. Defendants withheld income, Social Security and Medicare taxes from every paycheck. Plaintiff was listed as an employee in the Firm’s Personnel Manual, and he signed a form indicating he had received the handbook.
For various reasons, there were cash flow problems at the Firm. Plaintiff asserts that those problems already existed when he joined the Firm in 2002. Defendants argue that, despite the fact that Plaintiff claimed to understand office practices, he did not follow the Firm’s policies regarding handling of client materials, maintaining records of time spent on client Lwork or timely billing clients. As a result of Plaintiffs refusal/inability to submit appropriate time and billing records, the Firm began to experience a cash flow shortage. Due to this shortage, although staff employees continued to receive com *411 pensation on a timely basis, the three officers, Tucker, Fuller and Knight, sometimes went for extended periods of time without receiving compensation.
On January 23, 2012, Plaintiff gathered his client files and removed them from the Firm’s office in the middle of the night. He left a letter of resignation on Tucker’s desk.
On January 30, 2012, Plaintiff made a demand for his unpaid salary and business expenses that had not been reimbursed. In February 2012, he made the same demand and included a demand for unused vacation time; however, Defendants refused to pay the wages upon demand. For these reasons, Plaintiff filed this suit in May 2012, claiming damages under La. R.S. 23:631, et seq., and the FLSA. He alleged the facts recited above and also claimed that, although the LLC was never formed, the most recent tax returns show him as a 20 percent owner of the Firm, which he asserts is not in accordance with his original agreement with Tucker. He also claimed that, as an employee of the Firm, not only was he entitled to the salary mentioned above, he was also entitled to reimbursement of business expenses, vacation time and other benefits provided by the Firm’s Personnel Manual. He contended that, in spite of his alleged ownership in the Firm, the entity seldom abided by the formalities of an LLC or a corporation, such as holding meetings and electing officers and directors. He claimed that he never received a 20 percent portion of the business profits and was never treated as an owner of the business.
14PIaintiff further claimed that he was owed approximately $49,500 in unpaid wages from the Firm. He also alleged that he had wages due in the form of accrued and unused vacation time equal to at least $9,000 throughout his employment with the Firm, which, according to the Firm’s vacation policy, was not due and payable if his position with the company was terminated. The Personnel Manual states that an employee must use, or else forfeit, accrued unused vacation. Further, Plaintiff alleged that he incurred $12,067.08 in un-reimbursed expenses and $8,957.13 in out-of-pocket expenses, which were directly related to his work with the Firm.
A trial was held, at which the foregoing facts were adduced. The trial court issued a judgment in favor of Plaintiff for unpaid wages in the amount of $49,500, and denied the remainder of the relief sought. In its reasons for judgment, the trial court stated that the threshold issue to be determined in this case was whether Plaintiff was an employee under La. R.S. 23:631, et seq. It stated the crux of the issue in determining whether a worker is an employee for purposes of the statutes is the degree of control that the contract affords the purported employer over the individual. It also stated that it is not the actual supervision or control which is actually exercised by the employer that is significant, but whether, from the nature of the relationship, the right to do so exists.
The trial court noted that Defendants had shown that Plaintiff had freedom of movement. He brought his client files with him when he joined the Firm, worked on clients of his own choosing, traveled as he so desired, decided the rate to bill his clients and when to bill them and worked with no supervision.
IfiAlso in its reasons for judgment, the trial court stated that, based on the evidence presented at trial, Plaintiff was not an employee or treated as an employee during his time with the Firm and, thus, was not entitled to all the relief he sought under the statutes. It also found that, despite not being an employee, Plaintiff should be compensated for work he performed for the Firm, specifically in the *412 amount of $49,500. Although it decided to compensate Plaintiff for the $49,500 in unpaid wages, it denied him penalty wages on the basis that, as a nonemployee, he is not owed penalty wages and attorney fees. Further, it stated that Defendants had good cause for not remitting the amount Plaintiff claimed was due since Plaintiff left the Firm with all of the files upon which he routinely performed work, leaving Defendants unable to bill for work performed during Plaintiffs relationship with the firm.
The trial court also denied Plaintiffs request for 72 hours of accrued unused vacation time and overtime pay from May 2010 until his resignation based on the fact that it determined he was not considered an employee under the Revised Statutes. Further, it denied Plaintiffs request for unpaid expenses because his submitted requests lacked' supporting documentation since his expense reimbursement file could not be located following his departure from the Firm. The submissions were also deemed untimely since they were beyond a year old. The expenses included mileage, lodging and travel during the time that he provided services to clients, but Plaintiff took many of these clients’ files when he resigned, leaving the expenses unrecoverable for the firm. For those reasons the other requests for damages were also denied. It made no findings concerning Plaintiffs status as an employee under the FLSA.
| (-¡Plaintiff filed a motion for new trial and motion to tax costs. A hearing was held, after which the trial court granted the motion for new trial in part and awarded Plaintiff prejudgment interest on the amount awarded at trial and denied it in all other respects. The trial court awarded Plaintiff costs against Defendants of $4,439.29, but denied his requests for costs of three depositions totaling $865.
Plaintiff appeals the judgment of the trial court, pointing out that the issue of attorney fees was reserved at trial in the event that this court should reverse on that issue; therefore, it has requested that the matter be remanded for further evidence in this regal'd if the judgment on appeal favors the award of attorney fees.
DISCUSSION

Employee Status wider the Federal Law

Plaintiff contends that the trial court erred in finding that he was not an “employee” as defined by the FLSA. “Employee” is defined at 29 U.S.C. § 203(e)(1) as “any individual employed by an employer.” Claims for unpaid overtime under the FLSA are within the concurrent jurisdiction of the state courts, 29 U.S.C. § 216(b).
Plaintiff argues that the definition of “employee” under the federal law and jurisprudence is very broad and covers many individuals who may not qualify as employees under traditional principles of agency law based on the common-law “control test.” He argues that, in the cases he cited, both the federal courts and the U.S. Department of Labor have specifically rejected the “control test” utilized by the trial court in this case. He contends that the proper test for the trial court to have applied was the “economic realities” test, which focuses on whether, as a matter of economic reality, the 17worker is economically dependent upon the alleged employer or is, instead, in business for himself. He claims that the ultimate determination is based on whether the worker is actually in business for him or herself and, thus, is an independent contractor, or whether he or she is economically dependent on the employer and, thus, is an employee.
Plaintiff also argues that he is entitled to overtime compensation under 29 U.S.C. § 207 because Defendants failed to pay *413 him “on a salary basis.” He claims an employer must prove both a duties and salary test in order to satisfy an exemption from the overtime requirements of the FLSA. Although, generally, accountants meet the duties test to fall within the professional exemption, because Defendants often withheld his salary for months at a time, they failed to meet the salary test necessary for denying his overtime compensation. He contends that he is also entitled to an equal amount as liquidated damages under 29 U.S.C. § 216(b) and an award of attorney fees, in an amount to be determined by the trial court on remand.
Defendants argue that the work relationship that existed between the parties was not an employment situation as contemplated under Louisiana’s employment statutes, but, instead, Plaintiff was compensated as an officer of the Firm, like Tucker and Fuller, and unlike the staff employees. They claim Plaintiff was an officer and shareholder in the firm and was not viewed or treated as an employee. He required no supervision or control over his work, was not subject to discontinuance at the will of Defendants and was solely responsible for the billing of the clients he serviced. They argue that the trial court correctly found that Plaintiff was not an employee under the FLSA and, thus, was not entitled to the relief he sought. For these reasons, |8Pefendants contend that the trial court’s decision should be upheld by this court.

Federal Law-The Fair Labor Standards Act

Employee is defined in the FLSA as any individual employed by an employer. The overtime provision, 29 U.S.C. § 207(a), states in pertinent part:
(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.
Exemptions are found in 29 U.S.C. § 213, which states in pertinent part:
(a) Minimum wage and maximum hour requirements
The provisions of section 206 (except subsection (d) in the case of paragraph (1) of this subsection) and section 207 of this title shall not apply with respect to—
(1) any employee employed in a bona fide executive, administrative, or professional capacity ... shall not be excluded from the definition of employee employed in a bona fide executive or administrative capacity because' of the number of hours in his workweek which he devotes to activities not directly or closely related to the performance of executive or administrative activities, if less than 40 per centum of his hours worked in the workweek are devoted to such activities [.]
29 U.S.C. § 216(b), provides for damages in the event the employer violates the sections of the law related to unpaid wages, overtime, liquidated damages, attorney fees and costs and states in pertinent part as follows:
Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal *414 amount as liquidated damages. ... The court in such action shall, in addition to any judgment ^awarded to the plaintiff or plaintiffs, allow a reasonable attorney’s fee to be paid by the defendant, and costs of the action. ...
In Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013), the court stated that a determination of employment status under the FLSA is a question of law reviewed de novo. Citing, Antenor v. D & S Farms, 88 F.3d 925 (11th Cir. 1996).
In Hopkins v. Cornerstone Am., 545 F.3d 338 (5th Cir. 2008), the court stated as follows:
The definition of employee under the FLSA is particularly broad. See Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (noting that the FLSA “stretches the meaning of ‘employee’ to cover some parties who might not qualify as such under a strict application of traditional agency law principles”). To determine if a worker qualifies as an employee, we focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself. Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 303 (5th Cir. 1998). To aid us in this inquiry, we consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker’s opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. Id. No single factor is determinative. Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1043-44 (5th Cir.1987). Rather, each factor is a tool used to gauge the economic dependence of the alleged employee, and each must be applied with this ultimate concept in mind. Id.
Applying the economic realities test to the factual situation at bar, it appears Plaintiff was an employee of the firm. Plaintiff was not operating a separate accounting business during the ten years he worked as a CPA for the Firm; he worked only for the Firm, and Tucker determined when he would be paid. His sole source of income from 2002 until his resignation in 2012 was his $75,000 salary, plus occasional small Christmas bonuses given by Defendants to all employees. All of his work was billed to Defendants’ | ^clients on Defendants’ invoices. Defendants’ work requirements and personnel policies, which prohibited employees from performing any outside work, including “any accounting, auditing, management advisory services, tax, or other work of any type for compensation” without written permission from Defendants, applied to him, as they did to all other employees. Mandatory work hours were set that required him to work 40 hours per week during nontax season, and 54 hours per week from January 1 to April 15 of each year.
Plaintiff was required to keep track of his hours on time sheets, which reflect that he was a full-time employee. He was economically dependent upon Defendants for his salary payments and was not operating as an independent business. He was considered an employee for tax purposes since Defendants issued him a W-2 form instead of a 1099, which is the required form for independent contractors. Defendants withheld taxes and made other employee-required withholdings from each of his paychecks. For the foregoing reasons, we find that Plaintiff is considered an “employee;” and, therefore, this assignment of error has merit.
*415 A finding that Plaintiff is an employee of the firm necessitates a discussion of the specific relief sought at trial. Because he was awarded unpaid wages in the amount of $49,500 and, eventually, prejudgment interest, Plaintiff claimed that he was also entitled to damages under 29 U.S.C. § 216(b), for overtime, liquidated damages, attorney fees and costs. The issue of entitlement to overtime will be discussed in the context of the federal law.
In Martin v. Malcom Pirnie, Inc., 949 F.2d 611 (2d Cir. 1991), the court stated that, in order to attain “bona fide executive” status, an employee |umust meet both a salary basis and a duties test. The court also stated as follows:
Initially, we note that because the FLSA is a remedial act, its exemptions, such as the “bona fide executive” exemption claimed in this case, are to be narrowly construed. See Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); Mitchell v. Lublin, McGaughty & Assoc., 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959). Indeed, an employer bears the burden of proving that its employees fall within an exempted category of the Act. See Corning Glass Works v. Brennan, 417 U.S. 188, 196-97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); Arnold, 361 U.S. at 392, 80 S.Ct. at 452 [456]; Donovan v. Carls Drug Co., Inc., 703 F.2d 650, 652 (2d Cir.1983).
In Martin, supra, the court held that employees who were subjected to pay deductions on the basis of part-day absences could not, under strict regulatory definition, be considered “salaried” for purposes of the “bona fide executive” exemption to overtime requirements of the FLSA, and that the employer failed to establish it came within the regulatory “window of correction” that would permit it to treat employees as salaried despite its one-time or unintentional failure to adhere to regulatory requirements.
In the case at bar, Plaintiff argues that several sections of the Code of Federal Regulations are pertinent to the inquiry posed by his request for payment of overtime.
29 C.F.R. § 541.600(a) states as follows:
To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities. Administrative and professional employees may also be paid on a fee basis, as defined in § 541.605.
|1⅞29 C.F.R. § 541.602 states:
(a) General rule. An employee will be considered to be paid on a “salary basis” within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee’s compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided in paragraph (b) of this section, an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked. Exempt employees need not be paid for any workweek in which they perform no work. An employee is not paid on a salary basis if deductions from the employee’s predetermined compensation are made for ab *416 sences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available.
Because Plaintiffs salary payments were withheld for months at a time due to the Firms’ cash flow problems, he argues that he was not paid on a salary basis as a result of deductions caused by the operad ing requirements of the business. Although at first blush, this argument seemed persuasive, we note that the Martin, supra, case is not entirely apposite with the case at bar. In Martin, deductions were made from accountants’ salaries for half-day absences from work. In the case at bar, Plaintiff was always entitled to seek payment for his full salary. The firm did not make deductions from his paycheck as a result of the operating requirements of the business. Although he was not paid in a timely fashion due to the lack of cash flow, he was still entitled to the full amount of compensation, i.e., $3,000 twice a month, his agreed-upon salary; and, in fact, he has recovered $49,500 in this litigation.
11sBased on the foregoing, although Plaintiff can be classified as an employee, he also qualifies as a professional under the duties and salary test. Therefore, we find that he is not entitled to recover payment for overtime.
In regard to Plaintiffs assertion that he is entitled to liquidated damages under 29 U.S.C. § 216(b), we reiterate that the statute provides that, “Any employer who violates the provision of section 206 or section 207 of the title shall be liable to the employee. .. in the amount of their unpaid minimum wages, or their unpaid overtime compensation ... and in an additional equal amount as liquidated damages.” That is, if an award is made to the employee for violations of section 206 or 207, then an additional amount can be awarded as liquidated damages.
In this case, we found that Plaintiff was not entitled to payment for overtime since he is a professional. For that reason, he is not entitled to liquidated damages, which are awarded only if the employer has failed to pay overtime.

Employee Status under Louisiana Law

Plaintiff argues that the trial court erred in determining he was not an “employee” under Louisiana law, specifically, La. R.S. 23:681, et seq., and states that the trial court was clearly wrong in determining that he was an independent contractor rather than an employee. For this reason, he contends that he is entitled to payment for accrued, but unused, vacation, as well as liquidated damages and attorney fees.
Defendants’ argument with regard to employee status under Louisiana law is the same as its federal law claim, and it asserts that the trial court correctly denied Plaintiff relief with regard to accrued, but unused, vacation, liquidated damages and attorney fees.
11 ¿Louisiana law provides no definition of employee in the pertinent section of the law. In fact, La. R.S. 23:631 states only that, upon discharge of “any laborer or other employee of any kind whatever,” it shall be the duty of the person employing the employee to pay the amount due under the terms of employment.
In White v. Frederick, 44,563 (La.App. 2 Cir. 8/19/09), 17 So.3d 1016, writ denied, 09-2059 (La. 11/25/09), 22 So.3d 168, this court stated that the distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis. Although the White case is a liability case, rather than an employment or labor relations case, this court discussed how a distinction is made between an “employee” and an “indepen *417 dent contractor.” In doing so, this court cited Hickman v. S. Pac. Transp. Co., 262 La. 102, 262 So.2d 385 (1972), stating that the following factors were relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor’s own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.
In determining that Plaintiff was an employee of the Firm and not an independent contractor, we are influenced by several factors, the first of |1Rwhich is the very ambiguous relationship Plaintiff had with the Firm from the beginning in 2002. At that point, it appeared the parties had formed a partnership between Plaintiff and the corporation that was Donald, Tucker, and Betts; and, in fact, Plaintiff received a K-l tax form for the first few years he worked for the Firm. In 2005, Tucker allegedly formed a corporation entitled Donald, Tucker, Betts, Fuller & Knight; and, thereafter, all personnel received employee W-2 tax forms showing deductions for Social Security and Medicare.
Tucker’s testimony was that Plaintiff was a 20 percent owner of the corporation, yet Plaintiff never received any shares of stock indicating his ownership, no meetings were held, he never voted on any issues pertinent to the corporation and he never received 20 percent of any distributions from the corporation.
Although Plaintiffs name was in the Firm’s title, this alone does not exclude him from being considered an employee. He is clearly not an independent contractor, because contractors are hired to work for an indefinite period of time or to do piecemeal work. The appropriate tax form for an independent contractor is a 1099, not a W-2. These factors do not apply to Plaintiff. The only conclusion that can be reached from the facts is that Plaintiff was an employee of the Firm, and, as such, is entitled to certain benefits due to persons so classified under Louisiana law.
Plaintiff has claimed that he is entitled to payment for accrued, but unused, vacation time. He argues that the final paycheck he received during his employment reflected that he had 120 hours of accrued vacation as of November 16, 2011, two months prior to his resignation. Between that date | ifiand January 23, 2012, when he resigned, he took six days of vacation. For that reason, he asserts that he had nine days of accrued vacation left when he resigned. He claims that, at a daily rate of $288.46, he is entitled to $2,596.16. He also argues that the Firm’s policy that unused accrued vacation time is lost violates Louisiana law, La. R.S. 23:631, and that he should be compensated for that reason.
Defendants argue that, because Plaintiff is not an employee, he is not entitled to reimbursement for accrued vacation. Further, they contend that Plaintiff never submitted requests for vacation time to the Firm, that he took vacation at his discretion and did not notify the Firm’s accountant as to what time during a pay period was vacation and did not indicate his accrued vacation time in the Firm’s time records. They argue that company policy *418 states any accrued vacation time that is not used is lost.
Regarding an employee’s right to pay for unused vacation, La. R.S. 23:631(D) states:
D. (1) For purposes of this Section, vacation pay will be considered an amount then due only if, in accordance with the stated vacation policy of the person employing such laborer or other employee, both of the following apply:
(a) The laborer or other employee is deemed eligible for and has accrued the right to take vacation time with pay.
(b) The laborer or other employee has not taken or been compensated for the vacation time as of the date of the discharge or resignation.
(2) The provisions of this Subsection shall not be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy.
In Wyatt v. Avoyelles Par. Sch. Bd., 01-3180 (La. 12/4/02), 831 So.2d 906, the Louisiana Supreme Court examined these labor law statutes and found that they are designed to compel prompt payment of wages when an |17employee is discharged or resigns. It stated that they are penal in nature and must, therefore, be strictly construed and yield to equitable defenses, citing Boudreaux v. Hamilton Med. Grp., Inc., 94-0879 (La. 10/17/94), 644 So.2d 619. At issue in Wyatt, was La. R.S. 23:634, which prohibits an employer from requiring an employee to sign a contract forfeiting wages upon termination of the agreement and which states that, “in all such cases the employees shall be entitled to the wages actually earned up to the time of their discharge or resignation.” The court stated:
The Board violated La. R.S. 23:631 if it failed to pay plaintiffs upon their retirement “the amount then due under the terms of employment....” Pursuant to La. R.S. 23:631(D), vacation pay is “an amount then due” if, according to the employer’s stated vacation policy, the employee is eligible for and has accrued the right to take vacation time with pay and the employee has not taken or been compensated for the vacation time as of the date of his resignation. Subsection (D) cannot be interpreted to allow the forfeiture of any vacation pay actually earned by an employee pursuant to the employer’s policy. Similarly, La. R.S. 23:634 prohibits an employment contract which requires the forfeiture of “wages” upon resignation or discharge, (citation omitted). Accrued vacation time is “wages.” (citation omitted.) Thus, the Board’s “use it or lose it” policy violates La. R.S. 23:634 if it requires the forfeiture of accrued vacation time upon resignation or discharge.
Based on the statute, vacation pay is an amount then due if, “according to the employer’s stated vacation policy,” the employee is eligible for and has accrued the right to take vacation time with pay and the employee has not taken or been compensated for the vacation time as of the date of his resignation. Accrued vacation time is “wages”; and, if the Firm’s “use it or lose it” policy violates the law, it cannot be used to cause Plaintiffs forfeiture of wages upon resignation. In the case at bar, Plaintiff had negotiated with Tucker a paid vacation of three weeks per year. It is unclear when Plaintiff earned that vacation leave and whether it was | ^automatically available for him to use at the beginning of every January, or if he became entitled to the three weeks on his anniversary date of February 2. There was also some question about how many days of vacation leave Plaintiff had taken prior to his resignation, and whether or not those days had been *419 taken at the time of his resignation from the firm.
Since these statutes are penal in nature and must, therefore, be strictly construed and yield to equitable defenses, we reverse the trial court’s ruling and find that Plaintiff is entitled to reimbursement for accrued, but unused, vacation time and remand for further proceedings consistent with this opinion.

Employer’s Good Faith

Plaintiff assigns as error that the trial court erred in finding that Defendants had a good-faith basis for not paying him his earned wages since their testimony was that they failed to pay him solely because of the Firm’s cash flow problems. He claims that the trial court articulated different reasons for its finding, including that he took some client files with him when he resigned his employment, which were never raised by Defendants. He argues that even Defendants admitted that he had worked on those files and only he could timely complete the necessary work for those clients. For these reasons, he contends that he should be awarded penalty wages and attorney fees under La. R.S. 23:632.
Defendants argue that the trial court correctly denied penalty wages and attorney fees since Plaintiff was a partner, not an employee, of the Firm and was not entitled to either form of relief.
119La. R.S. 23:632, which concerns liability of an employer for failure to pay wages and attorney fees, and the good-faith exception are provided as follows:
A.Except as provided for in Subsection B of this Section, any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee’s daily rate of pay, or else for full wages from the time the employee’s demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.
B. When the court finds that an employer’s dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed. If the court determines that the employer’s failure or refusal to pay the amount of wages owed was not in good faith, then the employer shall be subject to the penalty provided for in Subsection A of this Section.
C. Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.
Although Plaintiff has argued that he is entitled to damages for 90 days’ wages at his daily rate as a penalty against Defendants for failure to pay his salary, La. R.S. 23:632(B) provides that, when the court finds that an employer’s dispute over the amount of wages due was in good faith, but the employer is subsequently found by the court to owe the amount in dispute, the employer shall be liable only for the amount of wages in dispute plus judicial interest incurred from the date that the suit is filed.
The trial court denied Plaintiff penalty wages on the basis that he was not an employee; however, in reviewing the record, we conclude that [ ¡^Defendants were *420 in good faith in opposing Plaintiffs suit on the basis that Plaintiff was either a partner or a professional, and not an employee, and was not entitled to that relief. We, therefore, affirm the trial court’s denial of Plaintiffs request for penalty wages.
Despite Plaintiffs failure to prevail on the issue of penalty wages, a different result is reached with regard to his request for attorney fees pursuant to La. R.S. 23:632(C), which provides for a mandatory award of attorney fees in a “well-founded” suit.
In Wyatt, supra, the court stated that La. R.S. 23:632 provides that reasonable attorney fees shall be allowed, which shall be taxed as a cost to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever is filed. The Wyatt court found that plaintiffs had presented a well-founded suit for unpaid wages accrued pursuant to the Board’s “use it or lose it” policy.
In the case sub judice, Plaintiffs suit is “well-founded” in that he has already recovered on his claim for unpaid wages and, in this appeal, is successful in his claim for vacation pay, if not overtime or penalty wages. We find, therefore, that he is entitled to an award for attorney fees. As previously agreed to by the parties and the trial court, this issue is remanded for further consideration consistent with this opinion.

Unreimbursed Expenses

Plaintiff argues that the trial court erred in denying his request for unreim-bursed business expenses totaling $20,559.21. He contends that he met the burden of proof necessary for the reimbursement and that many of these expenses were mileage reimbursements, which were properly listed on his daily timesheets and billed to Defendants’ clients. The Firm’s policy |21 entitled him to reimbursement for these expenses, and he submitted receipts and other documentation to support the expenses for which he sought reimbursement. He claims Louisiana law allows him ten years within which to seek such reimbursement.
Defendants argue that Plaintiff is not entitled to reimbursement of his expenses since he did not submit all of them in a timely fashion. The Firm’s policy specifies that requests for reimbursement “should” be submitted promptly.
In its reasons for judgment, the trial court denied Plaintiff’s claim for reimbursement of expenses and stated as follows:
Knight claimed that he has unpaid expenses, presented in the form of a spreadsheet that was prepared by his son over the course of two years. Notably, Knight’s expense reimbursement file was in the office prior to his departure, but could not be located following his departure. Despite his allegations that he submitted his requests for reimbursement, the requests, when submitted, lacked supporting documentation. Further, the submissions were untimely, having been accumulated for a year and sometimes more. The Court found it concerning that the majority of the requests for reimbursement were not submitted until after Knight’s departure, including mileage, lodging and travel during time that he provided services to clients. Many of the clients’ files went with Knight, leaving the expenses nonrecoverable for the firm. For those reasons, Knight’s claim for expense reimbursement is denied.
The standard of review in regard to this issue is manifest error. It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact *421 should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La. 1989).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings, for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Id.
We find that the trial court’s decision denying Plaintiffs request for reimbursement of expenses is not manifestly erroneous. Therefore, this assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the judgment of the trial court denying Plaintiff John David Knight’s request for overtime, penalty wages and liquidated damages is affirmed. The judgment of the trial court denying Plaintiffs employee status; denying payment for accrued, but unused vacation leave; and denying attorney fees is hereby reversed; the matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed equally to Plaintiff John David Knight and to Defendants Barney Tucker and Donald, Tucker, Betts, Fuller & Knight, A.P.A.C.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

. It is important to note from the outset that the legal relationship between the parties is disputed from the very beginning, and it is unclear whether the parties are in a partnership, an LLC, or an A.P.A.C. Several steps were taken at various times during Plaintiff’s working relationship with the firm to change the designation. For the sake of simplicity, for actions taken after 2005, Donald, Tucker, Betts, Fuller & Knight, A.P.A.C., will simply be referred to as "the Firm.”

. In his brief, Plaintiff claims Donald, Tucker, Betts, Fuller &, Knight, APAC, is an accounting firm, previously formed as a partnership, but changed in 2005 to a corporation. He claims that, after his hire by Tucker, his relationship with the firm was "indefinite.”