BROWN, Chief Judge.
| plaintiff, Luffey Timber Co., LLC, appeals from the judgment of the trial court finding that it failed to prove possession of a disputed area of land for 30 years. For the following reasons, we affirm.

Facts and Procedural Background

Defendants, James Ray Florence and Tanya Graham Florence (“Florence”) and Thomas E. Evans and Denise Elaine Evans (“Evans”), are the owners of lots 11 and 12 of the Greenwood Estates Subdivision, respectively. The two lots are adjacent to one another, with the Florence lot, # 11, being to the north. Both lots are bounded on the east by the eastern subdivision line of Greenwood Estates.
Lots 11 and 12 lie within the SE 1/4 of the JW1/4, Section 6, Township 18 North, Range 3 West, Lincoln Parish, Louisiana. At the time that the subdivision was created, John O’Neal was the owner of the 40-acre tract being subdivided. Approximately 1.249 acres to the east of the Evanses’ lot and .976 acres to the east of the Flor-ences’ lot were part of the 40-acre tract owned by O’Neal, but they were not incorporated into the subdivision. This is the area in dispute in the present matter.
Plaintiff, Luffey Timber Co., LLC, and its ancestors in title have record ownership of the RW 1/4 of the NE 1/4, Section 6, Township 18 North, Range 3 West, Lincoln Parish, Louisiana. The O’Neal 40-acre tract and the Luffey ancestors in title’s 40-acre tract shared a common title boundary, the governmental forty line. The disputed area lies west of the governmental forty line on O’Neal’s tract.
|2On November 27, 2006, the Florences acquired by quitclaim deed from O’Neal, the title owner of the disputed area, the area lying east of their lot up to the forty line. Thereafter, the Evanses too acquired *598 by quitclaim deed the area east of their lot up to the forty line. On May 4, 2007, Luffey received a quitclaim deed from The Brownland Corporation, an ancestor in title, for the “disputed area.” Luffey, however, acknowledges that none of the other deeds in their chain of title include the “disputed area.” In fact, Luffey concedes that Florence and Evans and their ancestors in title have record title to the area in dispute. Thus, Luffey claims ownership of the disputed area based upon acquisitive prescription.
Luffey filed the present boundary action on August 27, 2009. Luffey alleged that it and its predecessors in title, through tacking, had acquired ownership to the disputed area. The trial court ruled, however, that, at best, Luffey had shown possible possession of the disputed area from the mid-1980s until 2006, for a total of 21 years, and therefore ruled in favor of defendants.

Applicable Law

In a boundary action, the court renders a judgment fixing the boundary between contiguous lands in accordance with the ownership or possession of the parties. La. C.C.P. art. 8698. The boundary shall be fixed according to ownership of the parties; however, if neither party proves ownership, the boundary shall be fixed according to the limits established by possession. La. C.C. art. 792. If a party and his ancestors in title possessed for 30 years without interruption and within visible bounds more land than their title called for, then the boundary shall be fixed according to these bounds. La. C.C. art. 794. Thus, the party who relies on title will prevail unless the adverse party proves ^ownership by acquisitive prescription. Bowman v. Blankenship, 34,558 (La.App.2d Cir.04/04/01), 785 So.2d 134, writ denied, 01-1354 (La.06/22/01), 794 So.2d 794.
Acquisitive prescription of 30 years extends only to that which has been actually possessed. La. C.C. art. 3487. The party claiming acquisitive prescription of 30 years must have corporeal possession of the property and the intent to possess as owner. La. C.C. art. 3424; Williams v. McEacharm, 464 So.2d 20 (La.App. 2d Cir.1985). Corporeal possession means that one exercises the physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. Possession for purposes of acquisitive prescription must be continuous, uninterrupted, peaceable, public, and unequivocal. La. C.C. art. 3476.
One claiming possession without title can show adverse possession by enclosures, meaning natural or artificial marks that give notice of the character and extent of possession. Ewald v. Hubbard, 31,506 (La.App.2d Cir.03/12/99), 737 So.2d 858, writ denied, 99-1289 (La.06/25/99), 746 So.2d 602. However, what constitutes adverse possession depends on the nature of the property and must be determined on the facts of each case. Bennett v. Louisiana Pacific Corp., 29,598 (La.App.2d Cir.05/9/97), 693 So.2d 1319, writ denied, 97-1552 (La.10/03/97), 701 So.2d 199. Acts indicating adverse possession differ depending on the nature of the property. What suffices to show adverse possession of agricultural land, such as cultivation or using property as a pasture, differs from woodland where little may be done to indicate possession. Liner v. Louisiana Land & Exploration Co., 319 So.2d 766 (La.1975); Ryan v. Lee, 38,352 (La.App.2d Cir.04/14/04), 870 So.2d 1137, writ denied, 04-1531 (La.10/01/04), 883 So.2d 991.
Whether a party has possessed the disputed property for 30 years without interruption is a factual issue that will not be reversed on appeal absent manifest error or a showing of an abuse of discretion. *599 Garner v. Holley, 42,477 (La.App.2d Cir.10/03/07), 968 So.2d 234; Guillot v. Evans, 31,591 (La.App.2d Cir.02/26/99), 728 So.2d 1052, writ denied, 99-1178 (La.06/04/99), 744 So.2d 631. The burden of proof is on the party who pleads acquisitive prescription. Williams v. McEacham, supra.

Discussion

In 1976, John O’Neal plotted the Greenwood Estates Subdivision, and in 1997 sold the first lot, lot 11, to the Florences. Also in 1977, after a partition, Brownland became sole owner of the SW 1/4 of the NE 1/4. In 1981, Brownland hired the Ewing Timber Company to manage that land. Ewing Timber managed and Brownland owned that property until its sale to La-velle Aycock and Eddie Harmon in 2005. Thereafter, in February 2006, Luffey purchased the SW 1/4 of the NE 1/4 from Aycock and Harmon. In November 2006, Luffey began erecting a fence along the east line of the Greenwood Estates Subdivision. The Florences halted the construction of the fence. On November 27, 2006, the Florences and Evanses acquired title to the disputed land from O’Neal by quitclaim deed.
After acquiring title to the disputed area, the Florences and Evanses filed a possessory action against Luffey. The trial court in that matter found that the Florences and Evanses had failed to prove that they intended to possess the |fidisputed areas as owners.[1] The court, noting that the Florences and Evanses had acquired quitclaim deeds, reserved all rights to a petitory action or boundary dispute to the parties.
After the conclusion of the possessory action, the Florences began constructing a fence along the governmental forty line. As a result, Luffey filed the instant matter.
Luffey admits that it does not have title to the disputed area. Thus, to prove its ownership of that land, it is incumbent for it to prove unequivocal, corporeal possession of the disputed area from November 1976 until November 2006, when the Florences halted construction of the fence along the east subdivision line.
To support its case, Luffey submitted as evidence the entire possessory action suit. In that suit, Luffey had Andrew Harris Brown and Richard Todd testify. Brown was the current president of Brownland. He testified that he became president in 1988 or 1989, after he graduated from college. He testified that he would try to make an annual trip to the property to meet with the property manager, but that he rarely walked the property’s boundary line. The last time Brown could recall being in the vicinity of the disputed area was in 1987.
Richard Todd also testified in the pos-sessory suit. Todd was the forester employed by Ewing Timber who worked the property for Brownland. Todd began working on the SW 1/4 of the NE 1/4 in the 1980s, and continued to |fimanage that property until it was sold in 2005. Todd testified that based upon his recollection and Ewing Timber’s records the property was thinned on two occasions and the boundaries were marked on two occasions as well. Todd stated that they marked the boundaries with blue paint in the mid-1980s and then again with aluminum paint in 1994. Todd testified that these markings were made on the east line of the Greenwood Estates Subdivision.
Gary Rainey also testified on behalf of Luffey. Rainey was the surveyor hired by *600 Luffey in March 2006. Rainey stated that he had lived near the property for many years, and that he recalls back before Greenwood Estates was formed that orange paint was used in the area to mark boundaries. He testified that in preparation of trial, he walked along the disputed area and found that along the east line of the subdivision the trees were painted predominately blue, but that there was also still some aluminum paint in places as well. Rainey also stated that he believes that he saw some orange paint on a tree or two, but that it is possible that the blue paint had been placed over where the orange paint would have been.
The Florences and Evanses contend that the only definitive proof offered by plaintiff to show any possessory acts was Ewing Timber’s painting project in the mid-1980s. Defendants note that Luffey put forth no witnesses with pertinent knowledge of actual possessory acts prior to 1981. Meanwhile, defendants put forth the testimony of Dr. Florence, who purchased his lot in 1977. Dr. Florence testified that when he made his purchase there was no paint, fence, or anything else marking or designating the east side of his subdivision lot. Thus, defendants assert, all painting and/or blazing was done by Ewing Timber in the mid-1980s. Considering that the burden of proving 17ownership by acquisitive prescription is on plaintiff, defendants argue that the trial court correctly found that Luffey had failed to prove corporeal possession for more than 21 years.
The trial court found that based upon the “Wagnon Plat,” which established the Greenwood Estates Subdivision and was certified on October 20, 1976, there were no physical landmarks that would have indicated acts of a possessory nature. The plat noted existing blazed and painted line along the south boundary, blazed line and old fence along a north boundary, and an existing blazed line just to the west of where the established western boundary line of Greenwood Estates was. The trial court found the fact that the east boundary of the subdivision lacked any mention of a blazed or painted line was of particular importance. As such, the trial court stated that “it is the finding of the court that there had not been any visible findings of a possessory nature on or near the east boundary line of Greenwood Estates Subdivision on or before October 20, 1976, by J.C. Wagnon.” Ultimately, the trial court concluded that Luffey was only able to prove that an adverse possessory act sufficient to commence the tolling of acquisitive prescription occurred in the mid-1980s when Ewing Timber marked the boundary with blue paint.
Considering the deference owed to the trial court in its factual determinations, we cannot find that it abused its discretion in holding that Luffey and its ancestors in title possessed the disputed area for 21 years rather than the requisite 30 years.

Conclusion

For the reasons stated, we affirm the judgment of the trial court. Costs of this appeal are assessed to plaintiff, Luffey Timber Co., LLC.

. Both the Florences and Evanses testified in that matter that they used the disputed area for recreational purposes, and that they did not believe that they owned the disputed area, but rather that it was a portion of the subdivision.