COX, J.
Appellants, Florenda and Kathy Beals ("the Beals"), appeal a judgment from the Fifth Judicial District Court, Parish of Richland, State of Louisiana, wherein the trial court granted judgment in favor of Appellee, New Fellowship Baptist Church of Delhi ("New Fellowship"), dismissing their claims of trespass pertaining to a strip of land located within a tract of land owned by the Beals. Appellants contend that the trial court erred: (1) by failing to find that they were in constructive possession of the disputed property; (2) in establishing the boundary line between the two contiguous tracts of land; (3) in finding that New Fellowship possessed the disputed property openly, continuously, and without interruption within the statutory period required by law; and, (4) in not allowing the Beals to introduce evidence that could have changed the outcome of the case. The Beals request that the trial court's judgment be reversed and a new trial be granted on the merits. For the following reasons, we affirm.
FACTS
New Fellowship was established in 1919 when the Church purchased land outside of Delhi, Louisiana, from Jerome May. In 1920, a wooden building was erected on the land. In approximately 1950, two additions were made to the sides of the building. Originally, outdoor bathroom facilities were located on the back edges of the Church property until a septic tank was added in the early 1970s. In 2008, the Church placed a storage building on the back portion of its lot.
In October 2010, the Church was contacted by David May, who wanted to make a donation to rebuild the Church. May wanted to receive the tax benefit, so the Church was incorporated to form New Fellowship Missionary Baptist Church, Inc.[1] The Church Board of Trustees met to discuss the donation and rebuilding. The Church Board further contemplated purchasing the property located behind the Church. Florenda Beals, a member of the Church's Board, was present at the meeting.
The donation was ultimately delayed, and on October 29, 2014, the Beals purchased the landlocked piece of property located behind the Church from Leroy Theus, Jr. The act of sale describes the property as follows:
One half (½) acre, more or less, from a certain parcel of land situated in the *704 North Half of the Southeast Quarter of the Southeast Quarter (N ½ of SE ¼ of SE ¼) of Section 26, Township 17 North, Range 9 East (T 17N-R9E), Richland Parish, Louisiana.
On November 25, 2014, the Beals sent notice, by letter, to the Church that the property located behind their north boundary line had changed ownership. In the letter, the Beals stated they would allow New Fellowship's building to extend onto the property, as well as access necessary to maintain the needs of the building, with an understanding that New Fellowship would accept full liability pursuant to a lease agreement. In addition, the Beals requested removal of the portable storage building, any sewage lines/septic tank, litter/trash, and any other items stored or placed on or under the grounds of their property.
In response to the letter, New Fellowship requested a surveyor's report and certified maps showing the legal description of the Beals' property. Furthermore, on December 15, 2014, New Fellowship sent Florenda Beals a letter asking her to resign her position as a board member.[2]
On January 8, 2015, the Beals sent New Fellowship a notice of trespass warning, giving the Church 90 days to remove any buildings, structures, or other movables placed on their property. New Fellowship declined to take action without a legal/certified land survey. However, provided the Beals could produce a clear deed to the property, New Fellowship stated they were willing to discuss purchasing the property from the Beals.
In April 2015, the Beals contacted the Justice of the Peace to enforce the trespass warning. A notice to vacate was issued on April 22, 2015, but was later rescinded due to improper venue. On January 5, 2016, the Beals filed a complaint of trespass to real property. The Church filed an answer and reconventional demand to fix the boundary line according to a survey conducted by Messinger and Associates, Inc.
Trial was held on March 30 and 31, 2017. Ken McKay, Jr., a licensed surveyor who conducted a survey of the disputed property for the Beals, was the first to testify. McKay testified that he had been practicing as a surveyor in Louisiana for 30 years and was familiar with the surveyed area because he had been surveying the area with his father since the early 1970s. He stated that the oldest parcel of property in that area was the Church.
McKay explained that the Church deed calls the property line of the Church to be 100 yards along Turkey Creek Road.[3] He stated he was under the impression that "probably whoever marked it off would be the members of the church and the May family, it says [300] yards to a stake with a point of beginning, I'm assuming they paced a hundred steps and drove a stake in the ground." In 1979, he noted there was a white pipe "about mid-thigh high" at the front two corners of the Church.
*705 When he returned in 1988 to survey for Leroy Theus, Jr., the previous owner of the disputed property, McKay said he located the southeast corner of the Church from the white pipe. The property to the east-the Fountain property-and the southeast corner of the Turner tract were also marked in the same fashion. Upon measuring to the north, McKay found a pipe at the northeast and northwest corners of the Church. At that time, there was a water meter on the southwest corner of the Church; McKay expressed that he could "only assume that that may have torn out the southwest corner which used to be marked with the same thing, a white pipe." As McKay's job at that time was to survey the Theus property, he testified that he did not reset that property corner, but utilized it and went up to the northeast corner of the Jackson property and set an 8-foot offset because it was near a ditch. He also set a 12-foot offset at the northwest corner of the Church property. McKay stated he then went to the northeast corner of the Church property and surveyed across the canal, over to the Lynch Edwards property, and back up to the north line.
When McKay returned in 2016 to survey for the Beals, he stated he located some of the same corners he had utilized in 1979 and 1980, although some corners were missing, and marked the ½ acre to the best of his ability. McKay noted that the deed said to go to the south edge of the canal, but if the called distance did not reach the canal or went across the canal, he stopped at the south edge of the canal "which seemed to be the intention of the deed." Additionally, from the stake, the deed called for the point of beginning to go 105 feet north and about 210 feet east; McKay communicated that he found irons that matched those distances. Ultimately, McKay asserted he was "fully satisfied with the survey."
Jeffery Messinger,[4] a licensed surveyor who conducted a survey of the disputed property for New Fellowship, also testified regarding his methods. He noted that the Church was not surveyed in 1919, so "no one knows exactly where they measured from to come up with the [105] feet." In his professional opinion, Messinger believed the Church should have 113 feet by 210 feet instead of what is stated in the deed.
Messinger stated that when the Church received its deed, the intention was to build the Church on its property. Therefore, Messinger surveyed the Church by where he felt the line should be. He said he used other markers he found on other properties surrounding the area. Using these markers, he determined where the starting point should be located. He testified that his method "meshes" with the other deeds, including the deed for Leroy Theus, Jr.
Messinger also stated he surveyed by possession. He explained, "since the deed distances come down [81] feet from the deed to the east and then you come down on the west side, when you come down those distances it will give you more footage going to the road which makes the church a lot bigger." He testified that he informed the Beals in a letter that either they would get more land or the Church would get more land, but with the Church being built where he "felt it was" and because it had not been added onto, "that was possession."
*706 James Beals, a member of New Fellowship, testified that there was nothing behind the Church "that would give anyone incentive to go back there." However, he stated that since the Beals purchased the property, they had removed the trees and brush behind the Church and mow "quite frequently."
Azell Cornist, who was hired by the Beals to clear the property, testified that he cleared the property from the back of the Church to the ditch line. He stated he did not know anything else about the dispute.
Leroy Theus, Jr., the previous owner of the disputed property, testified that he purchased the property from Charles Stubblefield in 1988. He stated that there were no existing structures or anything beyond the 105-foot boundary line when he purchased the property. He also expressed that there was no clearing to the land. However, Theus conceded that the three-window section of the choir stand was there when he bought the property. When the Church made an addition to the building, Theus asserted that he did not have a problem with it or tell the Church to remove it from his property. Finally, Theus noted that the Church had been maintaining up to the thickets located behind the Church since he had purchased the property.
Minnie Dykes, a member of New Fellowship since the late 1960s or 70s, described the back of the Church as being a wooded area. She stated that the Church, however, had mowed "right down to the thicket," and the area was not fully cleared until it was purchased by the Beals.
Carolyn Beals, a 49-year-old member of the Church, testified that she remembered the bathroom inside the Church being located behind "[the preacher] and to the left." She stated that the Church has had plumbing for over 30 years. Additionally, she noted that the back wall of the Church with the three windows had been there as long as she could remember.
Azell Cornist, Jr., a member of the Church who helped his father clear the property for the Beals, testified that there was a 4-foot strip of land from the Church to the Beals' land that had been mowed.
Marilyn Beals Theus testified that the land behind the Church had been overgrown since she was a little girl. She stated that the back wall of the Church had also been there since she was a child, but the wall was "smaller." Marilyn noted that the wall had widened, but said it had not moved further back.
Edna Morrison, an 80-year-old member of New Fellowship, testified that the back wall of the Church was in the "same identical place" as it had been in 1949. Morrison stated that the Church has been maintaining the property behind it as far back as that year. She also recalled the outhouses located behind the Church, which were located near a sweet gum tree marked on the Messinger survey. Once the outhouses were removed, she said the Church added bathrooms, which have been in place for more than 30 years.
Jackie Robinson, a member of New Fellowship who continued maintenance and mowing for the Church after his father passed, testified he had personally been keeping up the grounds for 30 years. He stated that the main area he and his father had been maintaining was along the Messinger line back behind the storage building. Robinson recalled that the Church's septic tank was approximately seven or eight feet behind the building and believed it had been there for more than 30 years.
Daniel Dixon, the pastor at New Fellowship for the past 26 years, testified that there had been no new additions to the Church since he had been there; the choir *707 loft had not changed in any way; and, Jackie Robinson had mowed the area behind the Church for years. Additionally, Dixon stated that once the survey was completed, Messinger informed him that the Church was not encroaching on the Beals' property.
Pete McCall, an engineer, deacon, and chairman of the Church's Board of Trustees, was the last to testify. He stated that the back wall located in the choir area has been the same since at least the 1950s. He also noted that, upon inspection of the attic, the choir loft was part of the original building constructed in 1920. He said that the texture and size of the lumber used for the construction was more in line with lumber one could have purchased in the 1920s and 30s, rather than in the 1970s and 80s. McCall, like Edna Morrison, recalled the outhouses being by a sweet gum tree. Additionally, he expressed that the "mow line" was the same line that had been maintained and mowed by the Church for as long as he could remember.[5]
On April 10, 2017, the trial court rendered a judgment in favor of New Fellowship, dismissing the claims of trespass by the Beals. Although it felt that the McKay survey was more accurate, the trial court ordered, based on witness testimony, that the north boundary line of the New Fellowship property and the southern boundary of the Beals' tract be set at the Messinger survey line. New Fellowship was ordered to reroute its sewer line, which ran across the Beals' property, onto its own property. New Fellowship was also required to fence its northern bound property at its own expense. This appeal followed.
DISCUSSION
Whether a party has possessed disputed property for 30 years without interruption is a factual issue that will not be reversed on appeal absent manifest error or a showing of an abuse of discretion. Luffey Timber Co., L.L.C. v. Florence , 47,482 (La. App. 2 Cir. 9/26/12), 106 So.3d 596. To reverse a fact-finder's determination under the manifest error standard, an appellate court must engage in a two part-inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact, and (2) the court must further determine that the record establishes a finding that is clearly wrong. Middlebrooks v. City of Bastrop , 51,073 (La. App. 2 Cir. 1/11/17), 211 So.3d 1231, writ denied sub nom. Middlebrooks o/b/o Middlebrooks v. City of Bastrop , 2017-0286 (La. 5/1/17), 219 So.3d 331.
In their first assignment of error, Appellants assert that the trial court erred in finding that they did not acquire ownership and were not in constructive possession of the disputed property, pursuant to La. C. C. art. 531, contrary to evidence and testimony presented at trial. Louisiana C. C. art. 531 provides that one who claims the ownership of an immovable against another in possession must prove that he or she has acquired ownership from a previous owner or by acquisitive prescription. If neither party is in possession, he or she need only prove a better title.
Ownership and other real rights in immovables may be acquired by the prescription of 30 years without the need of just title or possession in good faith. La. C. C. art. 3486. Ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. La. C. C. art. 3487. A possessor lacking good faith and/or just *708 title may acquire prescriptive title to land by corporeally possessing a tract for 30 years with the intent to possess as owner. La. C. C. art. 3424. Such possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually possessed. La. C. C. art. 3476 ; Marks v. Zimmerman Farms, L.L.C. , 44,279 (La. App. 2 Cir. 5/20/09), 13 So.3d 768.
With regard to findings of fact based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings. Knight v. Tucker , 50,993 (La. App. 2 Cir. 11/16/16), 210 So.3d 407, reh'g denied (1/5/17), writs denied , 2017-0241, -0247 (La. 4/7/17), 218 So. 3d 109. Only the fact finder "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Id.
The trial court did not err in finding that New Fellowship acquired ownership of the disputed property through 30 years' acquisitive prescription. Pursuant to La. C. C. art. 531, Appellants proved they had acquired ownership from the previous owner. However, pursuant to La. C. C. art. 3487, New Fellowship's prescriptive title eclipsed and superseded the Beals' record title because New Fellowship corporeally possessed the disputed property for 30 years with the intent to possess as owner. Therefore, the Beals were not in constructive possession of the property.
At trial, witness testimony established that New Fellowship corporeally possessed the disputed property for 30 years. Multiple witnesses testified that the three-window wall of the choir stand had been in the same location for over 30 years. For example, Edna Morrison recalled that the wall had been there since at least 1949, and Pete McCall stated that the choir stand was part of the original building constructed in 1920. Additionally, Jackie Robinson asserted that he had personally maintained the grounds for over 30 years, mowing back to the Messinger survey line. More than one witness also conveyed that the Church has had indoor plumbing for over 30 years.
The trial court is accorded great deference in accepting or rejecting witness testimony, and the trial court accepted the testimony of the witnesses who established that the Church had corporeally possessed the disputed property for 30 years. The Church clearly intended to possess the property as owner, which is showcased by the three-window wall of the choir stand and the indoor plumbing being placed on and under the disputed property. Their possession was continuous, uninterrupted, peaceable, public, and unequivocal. As this is a reasonable finding based on the record, this assignment of error is without merit.
In their second assignment of error, Appellants claim that the trial court erred in establishing the boundary line between the two contiguous tracts of land based upon New Fellowship's survey. The Beals argue that the trial court incorrectly relied upon the Messinger survey rather than the McKay survey because McKay was more familiar with the history of the two tracts of land and had previously surveyed the property in 1988.
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party in title possessed for 30 years without interruption, within visible bounds, more land than their title called for, then the boundary *709 shall be fixed along these bounds. La. C. C. art. 794.
One claiming possession without title can show adverse possession by enclosures, meaning natural or artificial marks that give notice of the character and extent of possession. Luffey Timber Co., L.L.C. v. Florence, supra . What constitutes adverse possession depends on the nature of the property and must be determined based upon the facts of each case. Id.
As stated, New Fellowship proved 30 years' acquisitive prescription; therefore, the boundary shall be fixed according to limits established by prescription, rather than titles. Witness testimony established that the three-window wall of the Church had not moved for at least 30 years. Testimony also showed that the Church added bathrooms that had been in place for at least 30 years. Most importantly, it was clear from the record that the Church had been mowing and maintaining the disputed property for more than 30 years. The wall, indoor plumbing, and natural boundary created by mowing gave notice of the character and extent of New Fellowship's adverse possession. It is clear from the testimony at trial that New Fellowship possessed the property without interruption, within visible bounds, more land than their title called for, and the boundary should be fixed along these bounds.
Although it conceded that the McKay survey was the more accurate survey, the trial court relied on witness testimony, coupled with Messinger's surveying methods, to establish the boundary line. The trial court noted it was impressed by the previous owner's acknowledgement that the back of the building was the same wall that was there when he bought the disputed property in 1988. The trial court conceded this was not quite 30 years, but almost 30 years, and noted that Jackie Robinson confirmed that the back of the building had not changed with regard to the original choir stand. Edna Morrison also confirmed that the back wall had not moved in over 30 years. Additionally, Pete McCall confirmed that the choir stand was an original construction by going into the attic and looking at the boards.
Based on the record, the trial court did not err in determining that the Messinger line was the boundary line in this dispute. Jackie Robinson testified that he had mowed back to the Messinger line for more than 30 years. This assignment of error lacks merit.
In their third assignment of error, the Beals contend that the trial court erred in finding that New Fellowship possessed the disputed property openly, continuously, and without interruption within the statutory period required by law, contrary to the evidence and testimony presented at trial.
As previously stated, corporeal possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually possessed. La. C. C. art. 3476. Neither the Beals nor the previous owner interrupted New Fellowship's possession. The Church was built in 1920, and the Beals purchased the disputed property in 2014. During this time, the Church was not asked or told to remove the three-window wall or indoor plumbing from the disputed property. Additionally, the Church maintained up to the Messinger line by mowing and was never asked to stop. No one objected to the Church's corporeal possession of the disputed property. In fact, in their first letter to New Fellowship, the Beals stated they would allow the Church's building to extend onto their property. Thus, it is clear that the *710 possession was continuous, uninterrupted, and peaceable. The possession was also public and unequivocal as the three-window wall and mow line were clearly visible to the public and unambiguous. This assignment of error lacks merit.
In their final assignment of error, Appellants argue that the trial court erred in not allowing them to introduce evidence that could have changed the outcome of the judgment. Specifically, the Beals claim "the trial court objected to documentation that establishes the New Fellowship Missionary Baptist Church incorporated in 1920 and is heir property." Because the Beals believe New Fellowship to be "heir property," they assert that a new organization cannot be formed to litigate the property without consent of all the heirs.
Referencing La. C. C. P. art. 1363, this Court has previously stated, "It is incumbent upon the party who contends its evidence was improperly excluded to make a proffer, and if it fails to do so, it waives its right to complain of the exclusion on appeal." Webb v. Roofing Analytics, L.L.C. , 48,248 (La. App. 2 Cir. 7/24/13), 121 So.3d 756, 763. In the absence of a proffer of the documentation, this Court will not consider on appeal that the trial court ruled it inadmissible. Id.
At trial, the Beals produced a document that purportedly established that New Fellowship was formally incorporated in 1920. Appellants stated they retrieved the document from the Clerk of Court, but could not confirm whether it had been registered with the Secretary of State. The deed, however, does not indicate that the property was sold to a corporation; it indicates that it was sold to a church. Appellants attempted to distinguish the original deed from the transfer deed, but the trial court correctly pointed out that this was not a chain of title dispute, but rather a boundary dispute.
From the record, it is clear that Appellants failed to make a proffer. Thus on appeal, the Beals have waived their right to complain of the exclusion of the document. This Court will not consider this complaint on appeal; however, we do observe that the record supports the trial court's findings.
Regarding Appellant's argument pertaining to "heir property," the trial court correctly stated that the "exclusive to heirs and assigns" language in the deed was standardized language used in every deed and refers to persons in the chain of title. It does not mean that all heirs must consent to the formation of a new organization in order to litigate the property. This assignment of error is without merit.
CONCLUSION
Based on the foregoing, we affirm the rulings of the trial court. The record clearly established that New Fellowship acquired the disputed property through 30 years' acquisitive prescription. According to the testimony at trial, the three-window wall, indoor plumbing, and mow line had not changed in over 30 years. New Fellowship's corporeal possession was continuous, uninterrupted, peaceable, public, and unequivocal. The trial court did not err in setting the boundary line according to the Messinger survey. Costs of this appeal are assessed to Appellants.
AFFIRMED.

In 2017, the unincorporated association transferred ownership of the tract of land to the new corporation.

The letter accused Florenda of the following: (1) sharing information which the board discussed concerning the property with persons outside the church family, failing to keep church business confidential; (2) using the knowledge gained as a board member to conspire with an outside party to purchase property she knew the church was interested in purchasing; (3) personally profiting from the purchase of the property that the church was interested in; and, (4) making demands of the church concerning the property that could cost the church thousands of dollars.

On cross-examination, McKay conceded that there was no way to really know where Turkey Creek Road was located because it had moved south a couple of feet.

Jeffery Messinger was originally hired by the Beals to perform a survey. However, once the Beals discovered Messinger was performing a survey for the Church, they hired Ken McKay, Jr.

The remainder of McCall's testimony consisted of questions by Florenda Beals pertaining to her removal from the Board of Trustees and McCall's authority to do so.