STONE, J.
The plaintiff, Franks Investment Company, L.L.C. ("Franks"), appeals the trial court judgment which found that the defendants, Melba A. Shaw ("Melba") and Linda Shaw Porter ("Linda," or collectively referred to as "the Shaws"), acquired ownership of a disputed strip of land by virtue of 30-years' acquisitive prescription. For the following reasons, we affirm.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
This suit began as a boundary action instituted by Franks against the Shaws. Franks and the Shaws own neighboring tracts of land along Leonard Road in southern Caddo Parish. The plaintiff owns 432.617 acres of undeveloped land used for farmland ("Franks Tract"). The defendants own an adjacent 3-acre tract used for residential purposes ("Shaw Tract"). Both Franks and the Shaws' predecessors in interest purchased to a common boundary line represented by an old fence line. There is a disputed portion of land (the "disputed area") encompassing what the plaintiff asserts is the southeast portion of the Franks Tract, and what the defendants contend is the western portion of the Shaw Tract.
The Shaw Tract was originally purchased on January 20, 1977 by the Shaws' parents, William Shaw ("William") and Opal Shaw ("Opal," or collectively referred to as "the elder Shaws"), and the owners of the Franks Tract was owned by the Webb family. The property description in the elder Shaws' deed was based on a 1960 survey prepared by Paul Barber ("1960 Barber Survey"). The 1960 Barber Survey showed the western boundary of the Shaw Tract to be along a fence line. Currently, the fence identified in the 1960 Barber Survey no longer exists; however, an old fence post and "H brace" remains visible.
*1212 In addition to the old fence line, a north-south row of 50-plus-year-old pecan trees runs along the common boundary line between the two tracts. After the purchase, the elder Shaws began construction of a house, wooden metal tractor shed, and well. The construction was completed in 1978, and the tractor shed was built partially on the area in dispute. They also used the disputed area to go from Leonard Road to the northern portions of the Shaw Tract.
In 1977, the elder Shaws had three adult children: Melba, Linda, and William A. "Toby" Shaw ("Toby"), who visited but did not live on the property. After William passed away in 1987, Opal continued to live on the property and eventually remarried Jim Rhinehart ("Mr. Rhinehart").
Franks did not acquire the Franks Tract until 1998. At the time of acquisition, Franks conducted a boundary survey which showed the common boundary between the Franks Tract and the Shaw Tract to be the same north-south fence line identified in the 1960 Barber Survey. Since the purchase of the Franks Tract, Franks has leased the surface to various tenant farmers and the minerals to various mineral lessees.
Between the years 2003 and 2004, the City of Shreveport ("City") and the Port of Caddo/Bossier entered into a joint venture for the installation of a 24-inch water main located from Highway 1 to Flournoy Lucas Road. Franks and Opal executed servitude agreements of their respective tracts with the City in January and February of 2003.
Once Opal died in 2011, the three adult Shaw children became co-owners of the Shaw Tract. Also, in 2011, Melba moved into the house located on the Shaw Tract where she has continued to reside to this day. In 2013, Franks' property manager, Jacob Herrington ("Herrington"), observed a dirt road or worn area on the Franks Tract immediately west of the row of pecan trees, and notified the CEO of Franks. They subsequently hired a licensed surveyor, Doug Filler ("Filler"), who reviewed the property, staked the property line, and generated a survey plat showing the boundary between the Franks Tract and the Shaw Tract ("2013 Filler Survey"). On January 9, 2014, Herrington sent the 2013 Filler Survey to Melba and pointed out that a portion of the Shaws' shed appeared to straddle the boundary line and proposed a meeting to discuss this issue.
Subsequently, on January 27, 2014, the three Shaw children sent Herrington a letter informing him that they have occupied the property up to the pre-existing fence line for more than 30 years. Over a month later, on March 11, 2014, Toby sold his one-third interest in the Shaw Tract to Melba using the same property description contained in his parents' 1977 deed. On July 10, 2014, Herrington sent a letter to Melba explaining: (1) that the 2013 Filler Survey and the 1960 Barber Survey fully reconciled with each other; (2) that the two surveys established a common, north-south boundary line along the row of pecan trees (where the old fence line was previously located); and (3) that there is no evidence of any other existing or former fence line between the two tracts.
Photographs of the remnants of the old fence and a copy of the 2013 Filler Survey with a superimposed image of the 1960 Barber Survey were also enclosed with the letter. Herrington indicated that Franks intended to build a fence between the two tracts. Herrington further offered to move the encroaching shed, at Franks' expense, to a location of the Shaws' choosing but the Shaws refused. On April 19, 2016, Franks filed a boundary action citing Melba and Linda as defendants, and requesting that the court fix the common boundary line between the two tracts in *1213 accordance with the 2013 Filler Survey. On May 13, 2016, the Shaws answered the petition, contending that the boundary line, per the parties' respective titles, was farther to the west of the boundary line claimed by Franks.
Trial was held on March 16 and 17, 2017, where a total of eight witnesses testified before the court. During Franks' case in chief, Herrington was the first witness to testify. He testified that he first became concerned about a possible encroachment issue after noticing a dirt roadway had been utilized. He then notified his boss, and hired Filler to conduct a boundary survey. Based on the survey rendered by Filler, Herrington identified the property line between the Franks Tract and the Shaw Tract as an old, pre-existing fence line, and he stated that he found part of an old 'H brace' fence post at the northwest corner of the Shaw Tract. He also testified that the Filler survey showed a shed straddling the property line he drew.
Filler also appeared at trial and testified regarding the survey he conducted for Franks. He testified that the only survey he reviewed before conducting his own survey was the 1999 survey conducted by Ben Atchley which was provided to him by Franks. Based on his review of the disputed area, Filler found that the boundary between the Franks Tract and the Shaw Tract extends north on the adjacent Hearn Tract and Ervin Tract. Moreover, he unequivocally stated that he did not see any other physical evidence that would suggest a different property line than what he identified. Filler also testified that he found discrepancies between his own survey and the 1960 Barber Survey relied on by the defendants. Specifically, he found that the surveys were inconsistent in terms of bearings, and each survey cited a different location of the center line.
Franks' next witness to testify was the resident project representative for the Southern Loop Water Main project, Andrew Runnels. He testified that he was familiar with the servitude agreements between the City and the then-owners of the Franks Tract and the Shaw Tract. He was physically present on both the Franks Tract and the Shaw Tract and observed contractors install a 24-inch water main from Highway 1 to Flournoy Lucas Road which runs along the north side of Leonard Road.
According to his testimony, the water main pipeline was bored across the entire length of the Shaw Tract, including halfway between a pecan tree and manhole located in the disputed area. On cross-examination, he stated that the Shaws' agreement called for the contractors to bore under only one pecan tree. However, at Mr. Rhinehart's request, they actually bored under the entire property to ensure that there would be no damage to the Shaw Tract. During the two-year period when construction was taking place on the Shaw Tract, Mr. Rhinehart would also periodically inspect the disputed area to ensure that there was no damage to his pecan trees.
The remaining five witnesses to testify were all members of the Shaw family: Toby, Linda, Melba, Royal Rives, and Joseph W. Porter, III. In large part, the substance of each of their testimonies is identical. Each Shaw family member testified that they genuinely believed that they possessed and owned beyond the wooden metal shed located in the disputed area. Furthermore, they also testified that William built the family home and wooden metal tractor shed in 1978, and they have used and maintained the disputed area since 1977. The Shaws' maintenance of the disputed area included planting and mowing St. Augustine grass up to the crop line, picking up tree limbs, and installing a culvert in the dirt road. Moreover, the *1214 Shaws used the disputed area for a variety of events and occasions, including annual Easter egg hunts, pig roasts,[1] crawfish boils, cookouts, and overflow parking.
At the conclusion of trial, the trial court invited post-trial briefs. On October 20, 2017, the trial court rendered a written judgment finding that the Shaws acquired ownership and adversely possessed the disputed area up to the crop line for themselves in an open, continuous, public, unequivocal, and uninterrupted manner for over 30 years. Franks lodged this instant suspensive appeal.
DISCUSSION
On appeal, Franks has raised five assignments of error. Because the first four assignments of error involve the issue of acquisitive prescription, they will be considered together. The issue before this Court is whether the trial court was manifestly erroneous in finding that the Shaws' activities on the disputed area were sufficient to constitute open, public, unequivocal, and peaceable possession, in light of the manifest error standard of review.
Applicable Law
Immovable property may be acquired by thirty years acquisitive prescription. La. C.C. art. 794 ; Ewald v. Hubbard , 31,506 (La. App. 2 Cir. 3/12/99), 737 So.2d 858, writ denied 99-1289 (La. 6/25/99), 746 So.2d 602 ; Bennett v. La. Pacific Corp. , 29,598 (La. App. 2 Cir. 5/9/97), 693 So.2d 1319, writ denied , 97-1552 (La. 10/3/97), 701 So.2d 199. The possessor need not have just title to the property or be in good faith. Bennett v. La. Pacific Corp., supra.
The party seeking title to a tract of land through acquisitive prescription bears the burden of proof. Fallin v. Pesnell , 27,814 (La. App. 2 Cir. 1/24/96), 667 So.2d 581 ; Livingston v. Unopened Succession of Dixon , 589 So.2d 598 (La. App. 2 Cir. 1991). To acquire possession, one must intend to possess as owner and take corporeal possession of the thing. La. C.C. art. 3424. One is presumed to intend to possess as owner unless he began to possess in the name of and for another. La. C.C. art. 3427.
The intent to possess as owner has to do with the subjective intent of one who professes to possess and does not mean that the possessor must pretend to have valid title rights. Harper v. Willis , 383 So.2d 1299 (La. App. 3 Cir. 1980), writ denied , 390 So.2d 202 (La.1980).
Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. C.C. art. 3425. The party alleging acquisitive prescription must establish that his possession has been continuous and uninterrupted, peaceable, public and unequivocal. La. C.C. art. 3476 ; Pace v. Towns , 33,071 (La. App. 2 Cir. 4/5/00), 756 So.2d 680 ; Bowman v. Blankenship , 34,558 (La. App. 2 Cir. 4/4/01), 785 So.2d 134, writ denied , 2001-1354 (La. 6/22/01), 794 So.2d 794.
One who possesses a part of an immovable by virtue of a title is deemed to have constructive possession within the limits of his title. In the absence of title, one has possession only of the area he actually possesses. La. C.C. arts. 3426 ; 3487. Actual possession must be either inch-by-inch possession or possession within enclosures. Brunson v. Hemler , 43,347 (La. App. 2 Cir. 8/13/08), 989 So.2d 246, 249-50, writ denied , 2008-2297 (La. 12/12/08), 996 So.2d 1119. According to well-settled Louisiana jurisprudence, an enclosure is any natural or artificial boundary. La. C.C. art. 3426, comment (d), Revision Comments-1982, citing *1215 A.N. Yiannopoulos, Property §§ 212-214, in 2 La. Civ. Law Treatise (2d ed. 1980).
The party who does not hold title to the disputed tract has the burden of proving actual possession within enclosures sufficient to establish the limits of possession with certainty, by either natural or artificial marks, giving notice to the world of the extent of possession exercised. Conway v. Crowell Land & Mineral Corp ., 93-1158 (La. App. 3 Cir. 4/6/94), 635 So.2d 544, writ denied , 94-1198 (La. 7/1/94), 639 So.2d 1166 ; Hill v. Richey , 221 La. 402, 59 So.2d 434 (1952) ; Brunson v. Hemler, supra.
Acquisitive prescription is interrupted when possession is lost. The interruption is considered never to have occurred if the possessor recovers possession within one year or if he recovers possession later by virtue of an action brought within one year. La. C.C. art. 3465 ; Bowman v. Blankenship, supra.
Standard of Review
Whether or not disputed property has been possessed for 30 years without interruption is a factual issue and will not be disturbed on appeal absent a showing of abuse of discretion or manifest error. Bennett v. La. Pacific Corp., supra ; Owens v. Smith , 541 So.2d 950 (La. App. 2 Cir. 1989) ; Luffey Timber Co., L.L.C. v. Florence , 47,482 (La. App. 2 Cir. 9/26/12), 106 So.3d 596 ; Beals v. New Fellowship Missionary Baptist Church of Delhi, Inc. , 51,868 (La. App. 2 Cir. 2/28/18), 246 So.3d 701.
With regard to findings of fact based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings. Knight v. Tucker , 50,993 (La. App. 2 Cir. 11/16/16), 210 So.3d 407, writs denied , 2017-0241, (La. 4/7/17), 218 So. 3d 109 ; Beals, supra. Only the factfinder "can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Knight, supra ; Beals, supra at 708.
To reverse a factfinder's determination under the manifest error standard, an appellate court must engage in a two part-inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact, and (2) the court must further determine that the record establishes a finding that is clearly wrong. Middlebrooks v. City of Bastrop , 51,073 (La. App. 2 Cir. 1/11/17), 211 So.3d 1231, writ denied, 2017-0286 (La. 5/1/17), 219 So.3d 331 ; Beals, supra.
Analysis
From our review of the record, we cannot conclude that the trial court was manifestly erroneous or clearly wrong in finding that the defendants and their ancestors in title possessed the property for over 30 years and that the possession was continuous, uninterrupted, peaceable, public and unequivocal. More specifically, we find that the uses described in the trial court's written opinion were sufficient to support adverse possession of the disputed area for over 30 years.
In this case, the defendants had the burden of proving that they acquired ownership of the disputed area through adverse possession in excess of 30 years. At trial, witness testimony established that the Shaws corporeally possessed the disputed area since 1977. Witnesses for both the plaintiff and the defendants testified that the wooden metal tractor shed was built on or around 1978 by William and encroached on the disputed area. More importantly, the doors for the wooden metal shed are facing west. Thus, the only method that the defendants had to access the shed is by traversing the disputed area.
Moreover, multiple witnesses for the Shaws testified that they spent countless *1216 weekends mowing the entire Shaw Tract, picking up limbs; picking and selling pecans; hosting Easter egg hunts, pig roasts, cookouts, and crawfish boils; and parking vehicles and farm equipment in the disputed area. From our view, Franks appears to have been willfully unaware of any uses of the disputed area until 2013 which was 11 years after it purchased the Franks Tract and 36 years after the elder Shaws purchased the Shaw Tract. The trial court is afforded great deference in accepting or rejecting witness testimony, and it is very evident that the trial court was within its great discretion in accepting the testimony of those witnesses who established that the Shaws had corporeally possessed the disputed area for over 30 years.
However, Franks argues that the Shaws have made unequivocal admissions through the 2014 letter and witness testimony that indicate they did not intend to possess the disputed area as owner. We disagree. First, pursuant to Article 3427, the defendants' intent to possess as owner is presumed and there is no evidence in the record that reflects the Shaws were possessing in the name of and for another. Next, the record is replete with evidence that indicates the Shaws have always believed that the disputed area was a part of the Shaw Tract in its entirety, including the installation of a culvert on the dirt road and the directional placement of the shed doors. Finally, the alleged "admissions" made by the Shaws fail to negate their intention to possess the disputed area as owner. While testifying, Toby stated that the Shaws did not intend to own what was not theirs. However, we find that their intention is axiomatic from that simple statement. It unambiguously implies the Shaws' honest and genuine belief that they owned the disputed area, in light of the activities they conducted on it.
Post-Trial Survey
In its remaining assignment of error, Franks argues that the trial court committed a clear and reversible error because the post-trial survey arbitrarily creates boundaries not supported by the record. We disagree.
The court shall fix the boundary according to the ownership of the parties; if neither party proves ownership, the boundary shall be fixed according to limits established by possession. La. C.C. art. 792.; La. C.C.P. art. 3693. One who claims the ownership of an immovable against another in possession must prove that he has acquired ownership from a previous owner or by acquisitive prescription. La. C.C. art. 531.
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for 30 years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds. La. C.C. art. 794.
The issue of post-trial surveys conducted after trial was addressed by this Court in Roy v. Rasbury , 425 So.2d 1284 (La. App. 2 Cir. 1982), writ denied , 430 So.2d 78 (La. 1983), where this Court held that because the trial court essentially described the boundary in its written reasons for judgment, the survey conducted after the trial was merely the performance of a ministerial duty.
Boundary location is a question of fact and the determination of its location by the trial court should not be reversed absent manifest error. Pace v. Towns, supra ; Fallin v. Pesnell, supra ; Bowman v. Blankenship, supra.
To reiterate, the Shaws have successfully established their ownership of the *1217 disputed area by 30 years' acquisitive prescription; therefore, the boundary between the Franks Tract and the Shaw Tract must be fixed according to the limits established by possession. In its written opinion, the trial court concluded that the defendants adversely possessed the disputed area up to the crop line. Moreover, it is apparent from the record that the trial court heavily relied on evidence presented at trial by the defendants in making such a finding. Witness testimony established that the Shaws planted and mowed St. Augustine grass up to the crop line. Thus, the crop line created a natural boundary which gave notice of the character and extent of the Shaws' adverse possession.
Incidentally, the trial transcript also revealed that although Filler was a licensed surveyor, Franks failed to designate him as an expert witness, which would have allowed him to offer his opinion regarding the location of the boundary at trial. Instead, his testimony only concerned his own findings based on the survey he conducted. Beyond Filler's lay testimony, the record is lacks additional evidentiary support offered by the plaintiff at trial in support of an alternative boundary location.
Based on our review of the record, including the trial court judgment, we find that the survey was simply an illustration of the bounds described in the judgment. The language of the written judgment itself clearly stated that the survey is "attached hereto and made a part hereof." Consequently, since this case was initiated as a boundary action, the trial court performed its ministerial duty to set the boundary between the Franks Tract and Shaw Tract. See La. C.C.P. art. 3693 ; Roy v. Rasbury , supra. Therefore, under these circumstances, we cannot conclude that the trial court erred in incorporating and attaching the post-trial survey to its judgment.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court which found that the Shaws acquired ownership of the disputed area as a result of acquisitive prescription of 30 years. Costs of this appeal are assessed to the appellants, Franks Investments, L.L.C.
AFFIRMED.

The term "pig roasts" is referred to as "Cochon de Lait" in the trial court record.